F I L E D

PUBLISH

**June 30, 2005**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH WAYNE STIGER,

Defendant - Appellant.

No. 03-5043

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D. Ct. No. 00-CR-126-C)

Before **TACHA**, Chief Circuit Judge, **EBEL** and **HARTZ**, Circuit Judges.

Susan G. James, Law Office of Susan G. James & Associates, Montgomery, AL, appearing for Appellant.

Kevin C. Danielson, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with him on the brief), Office of the United States Attorney, Tulsa, OK, appearing for Appellee.

**TACHA** , Chief Circuit Judge.

This is an opinion on a petition for rehearing, which raised several issues for our reconsideration. We granted the petition only with respect to alleged

sentencing errors under *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005), which was decided after our initial opinion. We therefore withdraw our earlier opinion, *United States v. Stiger*, 371 F.3d 732 (10th Cir. 2004) ("*Stiger I*"), and substitute this opinion.

A jury found Defendant-Appellant Kenneth Wayne Stiger guilty of numerous counts of conspiring to possess and distribute narcotics. On appeal, he alleges seven grounds for us to find reversible error: (1) use of defective verdict forms; (2) a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as well as *Blakely v. Washington*, 542 U.S. —, 124 S. Ct. 2531 (2004), and *Booker*; (3) insufficiency of the evidence; (4) improper denial of his mistrial motion; (5) refusal to try him separately from his codefendants; (6) admission of summary testimony and exhibits; and (7) a violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. We take jurisdiction pursuant to 28 U.S.C. § 1291, AFFIRM in part, REVERSE in part, and REMAND.

## I. BACKGROUND

This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy. As the government proved at trial, the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma;

Wichita, Kansas; and Detroit, Michigan.

At trial, several witnesses testified to Mr. Stiger's involvement in the conspiracy. Specifically, these witnesses testified to seeing Mr. Stiger prepare marijuana for shipping, arrange for and assist in the transportation of marijuana and cocaine, and transfer and instruct others to transfer large amounts of money to Mr. Bellamy.

In addition to these general activities, Jennifer Natale testified that Mr. Stiger assisted three others in torturing her. Specifically, she testified that, in response to a dispute over the proceeds from a drug sale, Mr. Bellamy, two men identified only as Marvin and Dash, and another identified only as "Crazy Will," forced her to remove her clothes below the waist and burned her repeatedly with a hot iron and with boiling grease. They also threatened to pour grease on her lap and face and to take her to the desert and shoot her. While the others tortured Ms. Natale, Mr. Stiger "held a gun at [her] head and he pushed it in [her] nose and he told [her] he was going to make it hurt." [1]

A federal grand jury indicted Mr. Stiger for conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 21 U.S.C. § 846; conspiring to launder money in violation of 18 U.S.C. § 1956(h); and one count of

---

[1] Although not entirely clear, Mr. Stiger appears to concede these facts in his appellate brief.

forfeiture pursuant to 18 U.S.C. §§ 982 and 1956(h). After a twenty-three-day trial involving over fifty witnesses, a jury convicted Mr. Stiger on all counts. The District Court sentenced Mr. Stiger to     life in prison to be followed by ten years' supervised release and imposed $25,200 in fines and assessments. Mr. Stiger filed timely notice of appeal, raising seven issues. We address each below.

## II. DISCUSSION

A.     Verdict Forms

1.     *Standard of Review*

Mr. Stiger first argues that the verdict forms used at trial were defective. We review verdict forms under the same "abuse of discretion standard we apply to jury instructions." *United States v. Jackson*, 213 F.3d 1269, 1285 (10th Cir.), *rev'd on other grounds*, 531 U.S. 1033 (2000). "A district court does not abuse its discretion so long as the charge as a whole adequately states the law." *United States v. Starnes*, 109 F.3d 648, 651 (10th Cir. 1997) (internal quotations omitted). To make this latter determination, we review de novo whether the charge as a whole "accurately informed the jury of the governing law." *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1262 (10th Cir. 1999).

Even if we conclude that the District Court erred, we must also determine whether the error is "harmless error." Fed. R. Crim. P. 52(a). The government bears the burden to show that a nonconstitutional error is harmless by a

preponderance of the evidence. *United States v. Wittgenstein*, 163 F.3d 1164, 1169 (10th Cir. 1998). An error "is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Cestnik*, 36 F.3d 904, 910 (10th Cir. 1994).

2. *Merits*

Mr. Stiger contends that the verdict forms are defective because they did not require the jury to find him guilty of participating in the conspiracy before it decided his guilt as to the objects of the conspiracy. Because the forms used by the District Court only required a finding as to the objects of the conspiracy, Mr. Stiger argues, "[i]n the case at bar we do not even have a conviction on the conspiracy count." He therefore urges that the fundamental nature of this error mandates a new trial.

In response, the government claims that the verdict forms sufficiently informed the jury of the need to find Mr. Stiger guilty of the overarching conspiracy not just its objects. Noting that the jury "was given detailed instructions on the elements of the conspiracy charge and what it had to find in order to determine whether or not each defendant was guilty of conspiracy," the government contends that we should interpret the verdict form in light of the instructions given. Understood in this light, the government argues, the verdict forms accurately informed the jury of the law.

Despite the government's protestations, we agree with Mr. Stiger that the verdict forms never required the jury specifically to find him guilty of the overarching conspiracy. [2] Like Mr. Stiger, we read the verdict forms to require a

_____

[2] The pertinent forms read:

**VERDICT FORM -I**
**KENNETH WAYNE STIGER**
**COUNT I**

**Count 1** -charges a drug conspiracy in violation of Title 21, United States Codes[s] [sic], Section 846. We, the Jury, in the above styled and numbered case do upon our oaths, unanimously find the defendant **Kenneth Wayne Stiger** as to Count 1, as follows:

**Object 1** - Knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1):

_____ Not Guilty        ___X__ Guilty

**Object 2** - Knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1):

_____ Not Guilty        ___X__ Guilty

**Object 3** - Knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1):

_____ Not Guilty        ___X__ Guilty

(continued...)

- 6 -

finding only as to objects of the conspiracy.

Although we harbor grave doubts about the propriety of the use of these verdict forms, we need not decide whether their use constitutes error or whether the jury instructions cured any possible error because, even if we found error, the use of the verdict forms did not substantially influence the outcome of the trial. *See United States v. Magleby*, 241 F.3d 1306, 1318 (10th Cir. 2001) ("Notwithstanding our doubts regarding the relevance of this testimony, we need not decide whether the district court abused its discretion in admitting it because we find that it was harmless error.").

The government carries its burden to establish harmlessness by pointing to the testimony of at least fourteen witnesses who offered testimony against Mr. Stiger. Several witnesses testified at length to his involvement in packaging and coordinating shipments of drugs for the conspiracy and in sending large amounts

---

[2](...continued)

**VERDICT FORM -6**
**COUNT 1- DRUG CONSPIRACY**
**QUANTITY OF CONTROLLED SUBSTANCE**

*As previously instructed, only if you find one or more of the defendants now on trial "guilty" of Count 1, will you proceed to make a determination regarding the amount of controlled substance attributed to each object of the conspiracy charged in the Second Superseding Indictment. If*, on the other hand, you find all of the defendants now on trial "not guilty" of Count 1, then you need not consider Verdict Form- 6.

of money to Mr. Bellamy.  We are especially persuaded by Ms. Natale's extensive and gruesome testimony regarding Mr. Stiger's involvement in her torture.  As she made clear in her testimony, this torture was directly related to a dispute about the proceeds from a drug sale for the conspiracy.  In light of this testimony, we find that the alleged verdict-form error did not substantially impact the outcome of the trial. [3]

B.    Sentencing

1.    *Standard of Review*

Mr. Stiger next argues that the District Court violated his Sixth Amendment rights by not requiring the jury to make a specific finding as to the amount of drugs for which he was personally responsible.  Because Mr. Stiger made this constitutional argument at sentencing, we review the issue de novo.    *United States v. Lampley*, 127 F.3d 1231, 1237 (10th Cir. 1997).

2.    *Merits*

Below, the Government, in accordance with 21 U.S.C. § 851(a), notified Mr. Stiger that it would seek the application of 21 U.S.C. § 841(b)(1)(A).  "Section 841(b)(1)(A) requires imposition of a 'mandatory term of life

---

[3]To be clear, we do not approve of the District Court's use of the verdict forms at issue.  The District Court should have employed forms that required a finding as to guilt for the conspiracy.  Rather, we hold only that any resulting error did not affect the outcome of the trial as required by Rule 52(a) of the Federal Rules of Criminal Procedure.

imprisonment without release' if (1) a defendant is convicted of violating § 841(a), (2) that conviction involved a certain requisite amount of drugs, and (3) the crime was committed 'after two or more prior convictions for a felony drug offense have become final.'" *United States v. Harris*, 369 F.3d 1157, 1167 (10th Cir. 2004). In this case, the jury found that the conspiracy as a whole violated 21 U.S.C. § 841(a)(1) by trafficking 5 or more kilograms of a substance containing cocaine, 1000 or more kilograms of a substance containing marijuana, and 50 grams of a substance containing crack cocaine. In addition, the amounts and types of drugs that the jury found attributable to the conspiracy as a whole are sufficient to satisfy the second prong of the § 841(b)(1)(A) mandatory life sentence requirement.

At sentencing, Mr. Stiger objected to the jury's finding as to drug type and amount for the entire conspiracy, arguing that *Apprendi* and now, *Booker*, require the jury also to make specific findings as to the amount and type of drug attributable to him individually.[4] The District Court concluded that *Apprendi* does not require the jury in a conspiracy case to make individual findings as to each member of the conspiracy, determined Mr. Stiger was integral to the

---

[4]Had this occurred, Mr. Stiger appears to contend, he would not have been subject to the ten-year or life mandatory minimum because § 841(b)(1)(B) provides for a mandatory minimum of only five years' imprisonment for trafficking in lesser quantities of controlled substances and only ten years if there is a prior felony drug conviction.

conspiracy and could be sentenced as though he were responsible for the full drug types and quantities, found that Mr. Stiger had two previous felony drug convictions, and therefore sentenced him to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). On appeal, Mr. Stiger raises two objections to the application of § 841(b)(1)(A).

First, Mr. Stiger argues that *Apprendi* and *Booker* require the jury, rather than the judge, to determine whether he had two prior felony drug convictions. In essence, he asserts that *Booker* overrules *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which holds that the fact of a prior conviction may be found by a sentencing judge. We have previously dismissed this argument. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 n.1 (10th Cir. 2005) (en banc); *United States v. Moore*, 401 F.3d 1220, 1223–24 (10th Cir. 2005). Thus, the fact that the District Court found that Mr. Stiger had two prior felony drug convictions does not render his sentence under § 841(b)(1)(A) constitutionally infirm.

The second issue Mr. Stiger raises—whether a jury, after *Apprendi* and *Booker*, must determine the amount and type of drug attributable to individual coconspirators rather than simply attributable to the entire conspiracy—is one of first impression before this Court. Prior to *Booker*, however, at least five other circuits addressed it; each held that *Apprendi* only requires the jury to make a finding, beyond a reasonable doubt, as to the amount of drugs for which the

entire conspiracy is liable. *See United States v. Phillips*, 349 F.3d 138, 141–43 (3d Cir. 2003), *vacated on other grounds*, *Barbour v. United States*, 125 S. Ct. 992 (2005); *United States v. Knight*, 342 F.3d 697, 709–12 (7th Cir. 2003); *United States v. Allen*, 65 Fed. Appx. 476, 480–81 (4th Cir. 2003) (Table); *United States v. Turner*, 319 F.3d 716, 722–23 (5th Cir. 2003); *Derman v. United States*, 298 F.3d 34, 42–43 (1st Cir. 2002).

The reasoning of these courts is simple. First, *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Second, in the conspiracy context, a finding of drug amounts for the conspiracy as a whole sets the maximum sentence that each coconspirator could be given. *Derman*, 298 F.3d at 42 (discussing *Edwards v. United States*, 523 U.S. 511 (1998)). Because the subsequent attribution of drug amounts to individual coconspirators cannot increase their maximum sentence, "the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly (so long as the sentence falls within the statutory maximum made applicable by the jury's conspiracy-wide drug quantity determination)." *Id.* at 43.

We agree with the reasoning of our sister circuits that *Apprendi* requires the jury only to set the "maximum sentence ([i.e., the] ceiling)" under which each

coconspirator's sentence must fall. *See Knight*, 342 F.3d at 711. The judge, however, may determine the "floor" by finding the precise drug quantity attributable to each coconspirator. *See id.* The jury is not required to make individualized findings as to each coconspirator because "[t]he sentencing judge's findings do not, because they cannot, have the effect of increasing an individual defendant's exposure beyond the statutory maximum justified by the jury's guilty verdict." *Id*.

We also conclude that *Booker* does not call this practice into question. The primary innovation that the Court introduced in *Booker* was to clarify what the term "statutory maximum" means for *Apprendi* purposes. "Our precedents . . . make clear that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Booker*, 125 S.Ct. at 749. Thus, under *Booker*, the "statutory maximum" is the sentence prescribed by any applicable mandatory sentencing regime, including the United States Code, when that sentence is calculated solely upon jury-found facts, admitted facts, or the fact of prior convictions. *See id.* at 756. In addition, *Booker* does not alter the well-established rule that a finding of drug type and quantity for the conspiracy as a whole sets the maximum sentence that each coconspirator can constitutionally be given. *See Derman*, 298 F.3d at 42; *see also* 21 U.S.C. § 846 ("Any person who

attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense."). Therefore, the practice outlined above is entirely consistent with *Apprendi* and *Booker* because the jury sets the applicable "statutory maximum" by determining the type and quantity of drugs attributed to the conspiracy as a whole while the judge's findings have the effect only of potentially decreasing an individual defendant's sentence.

Our analysis of the constitutionality of Mr. Stiger's sentence might be different if the District Court had relied upon judge-found facts and the U.S. Sentencing Guidelines, instead of § 841(b)(1)(A), to sentence Mr. Stiger to life imprisonment. Here, the record is not clear whether the District Court sentenced under the Guidelines, and thus relied upon judge-found facts in the context of a mandatory sentencing regime, or § 841(b)(1)(A). *See* R. Vol. XXXVIII at 26 (sentencing Mr. Stiger "under the law and the guidelines"). Nonetheless, even if we assume the District Court erroneously found facts and mandatorily applied the Guidelines, *see Gonzalez-Huerta*, 403 F.3d at 731–32, such an error would be rendered harmless beyond a reasonable doubt by the presence of the mandatory sentence outlined in § 841(b)(1)(A). *See* Fed. R. Crim. P. 52(a); *Chapman v. California*, 386 U.S. 18, 24 (1967). As such, we affirm the District Court's sentence.

C.     Sufficiency of the Evidence

1.     *Standard of Review*

Following the presentation of the government's case, Mr. Stiger moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, alleging insufficient evidence. "We review the sufficiency of the evidence de novo." *United States v. Overholt*, 307 F.3d 1231, 1249 (10th Cir. 2002). In so doing, "we ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000) (internal quotations omitted). "We rely on the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." *United States v. Radcliff*, 331 F.3d 1153, 1157 (10th Cir. 2003) (internal quotations omitted).

2.     *Merits*

Mr. Stiger contends that the District Court erred in denying that motion because the government introduced insufficient evidence to prove that he was a member of the alleged drug conspiracy. Although conceding that the drug conspiracy existed, he argues that the government failed to prove that he "had a specific intent to join the Darrell Bellamy conspiracy." To this end, he asserts

that the government failed to introduce evidence that he was a member of the Bellamy conspiracy and that, at most, it only "proved that [he] was involved in drug distribution and that he and [Mr.] Bellamy had overlapping drug involvement." Inexplicably—and seemingly in conflict with his recitation of facts—he also concludes that he "was never involved with the Jennifer Natale torture episode."

The record wholly belies Mr. Stiger's assertions that insufficient evidence exists to prove his membership in the Bellamy conspiracy. *See infra* pp. 2-3. As the government illustrates in its brief, and we confirmed upon our independent review of the record, substantial evidence was presented showing that Mr. Stiger "knew the objective of the conspiracy was to profit from the distribution of illegal drugs, that he voluntarily participated, . . . that he acted to further the objectives of the conspiracy," and that he "took essential and integral steps to help the organization profit from the sale of illegal drugs." We therefore affirm the District Court's decision to deny Mr. Stiger's motion for judgment of acquittal.

D.  Mistrial

1.  *Standard of Review*

Mr. Stiger moved for a mistrial below. In determining whether to grant a mistrial, a district judge must first determine whether an error has occurred and, if so, whether that error impaired the "defendant's right to a fair and impartial trial."

- 15 -

*United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004). "We review a district court's refusal to grant a mistrial for abuse of discretion." *Id.* "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Mitchell*, 113 F.3d 1528, 1531 (10th Cir. 1997).

2. *Merits*

Well into the trial, Mr. Stiger's counsel moved for a mistrial based on the fact that attorney Robert Burton visited with him on several occasions about representing him in this case. The visits were unfruitful for Mr. Burton, as the District Court ultimately appointed another attorney to represent Mr. Stiger. The District Court, however, appointed Mr. Burton and his law partner to represent Richard Taylor, one of Mr. Stiger's codefendant's. Mr. Taylor entered a guilty plea prior to Mr. Stiger's arraignment and became a witness for the government at Mr. Stiger's trial. Mr. Burton continued to represent Mr. Taylor throughout the course of this testimony.

Mr. Stiger's trial counsel claims that he was not initially aware of Mr. Burton's conversations with Mr. Stiger. Upon learning of these conversations, however, trial counsel moved for a mistrial based upon a conflict of interest. Trial counsel stated that Mr. Burton "visited [his] client three times before th[e]

- 16 -

trial started" and that the two spoke "several times about the case," although he could not say with certainty whether those conversations would prejudice his client. Counsel sought an evidentiary hearing to determine whether an attorney-client relationship existed between Messrs. Stiger and Barton. The District Court denied the mistrial motion without conducting an evidentiary hearing.

On appeal, Mr. Stiger argues that the District Court should have conducted this evidentiary hearing before dismissing his conflict-of-interest claim. He asserts that the summary dismissal of his mistrial request based on the asserted conflict without hearing or further inquiry violated his rights to due process, confrontation of witnesses, and conflict free counsel. As such, Mr. Stiger asks us to reverse his conviction.

In response, the government asserts that Mr. Burton never represented Mr. Stiger and that a new trial would gain Mr. Stiger nothing because his remedy would be a new trial in which co-defendant Taylor would again testify. [5]

Two sources inform whether a district court should disqualify an attorney. "First, attorneys are bound by the local rules of the court in which they appear. . . . Second, because motions to disqualify counsel in federal proceedings are

_____

[5] On appeal, the government has not argued that Mr. Stiger's claim is essentially an untimely motion to disqualify, which we would review for plain error. Thus, we assume for purposes of this appeal that Mr. Stiger timely raised this issue in the context of a mistrial motion during trial.

substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994).

The United States District Court for the Northern District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct.[6] Here, Oklahoma Rule of Professional Conduct Rule 1.9 provides the relevant rule.[7] Oklahoma Rule 1.9

---

[6]*See* N.D. Okla. R. 83.2 ("Attorneys practicing in this court are expected to conduct themselves in accordance with the Oklahoma Rules of Professional Conduct, as adopted by the Oklahoma Supreme Court, as the standard of conduct of all members of the Oklahoma Bar Association."); *see also* N.D. Okla. R. 83.4 (oath requiring an attorney to "solemnly swear" to "be bound by the Oklahoma Rules of Professional Conduct and [to] conduct [himself] in compliance therewith at all times.").

[7]This rule reads:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

    (1) whose interests are materially adverse to that person; and

    (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client consents after consultation.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(continued...)

tracks exactly the text of Rule 1.9 of the ABA Model Rules of Professional Conduct, which "we believe reflect[s] the national standard to be used in ruling on disqualification motions." *Cole*, 43 F.3d at 1383.

Under Rule 1.9, a party seeking to disqualify opposing counsel must establish that "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant." *Cole*, 43 F.3d at 1383 (citing ABA Model Rule 1.9(a) & (c)). If the movant establishes the first two prongs, an irrebuttable "presumption arises that a client has indeed revealed facts to the attorney that require his disqualification." *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985). [8]

---

[7](...continued)

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

[8] Although we have subsequently modified *Smith* as it applies to imputing a conflict to an entire firm, *see SLC Ltd. v. Bradford Group West, Inc.*, 999 F.2d 464, 467-68 (10th Cir. 1993), we have not retreated from its holding as to

(continued...)

To show that an attorney-client relationship existed, Mr. Stiger need not show that "the parties . . . executed a formal contract" or that he paid fees. *Cole*, 43 F.3d at 1384. Mr. Stiger need only "show that (1) [he] submitted confidential information to a lawyer and (2) [he] did so with the reasonable belief that the lawyer was acting as [his] attorney." *Id.* In *Cole*, we cited approvingly *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978), which held that an "implied professional relation" can exist in the context of the "preliminary consultation by a prospective client with a view to retention of the lawyer," even though "actual employment does not result." *Id*. In addition, "the party moving for disqualification need not reveal the substance of its communication to the lawyer" and "[u]sually, a showing of the circumstances and subject of the consultation will be enough to demonstrate whether the information was confidential." *Cole*, 43 F.3d at 1384 n.8.

In applying the second prong—the "substantial relation" test—we look to whether "the factual contexts of the two representations are similar or related." *Smith*, 757 F.2d at 1100 (quotation omitted). "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Model Rules of

---

[8](...continued)
individual lawyers.

- 20 -

Prof'l Conduct R. 1.9 cmt.

Here, Mr. Stiger made a non-frivolous allegation before the District Court that Mr. Barton and he had an attorney-client relationship in a substantially related matter. We find that the District Court abused its discretion by failing to investigate this allegation further through an evidentiary hearing. Because we lack essential factual predicates to conduct a disqualification analysis, we cannot pass on the merits of Mr. Stiger's claim on appeal. As such, we remand this issue to the District Court with instructions to hold an evidentiary hearing in accord with this opinion. If, following this hearing, the District Court concludes that an attorney-client relationship existed between Messrs. Burton and Stiger, it should then determine whether the representation affected Mr. Stiger's "right to a fair and impartial trial." *Meridyth*, 364 F.3d at 1183.

E.    Severance

1.    *Standard of Review*

Mr. Stiger next argues that the District Court erred in refusing to sever his trial from those of his alleged coconspirators because the government sought to introduce highly prejudicial evidence of codefendant Marlin Mack's alleged murdering of two people. In *United States v. Evans*, we held that:

> The decision whether to grant a severance is within the sound discretion of the trial court. We will not disturb the trial court's decision absent an affirmative *showing of abuse of discretion and a strong showing of prejudice*. To establish abuse of discretion more is

required than that separate trials might have offered a better chance for acquittal of one or more of the accused. 970 F.2d 663, 676 (10th Cir. 1992) (internal citations and quotations omitted) (emphasis added).

Furthermore, Mr. Stiger must overcome the presumption that "in a conspiracy trial it is preferred that persons charged together be tried together." *United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir. 1994), *cert. denied*, 513 U.S. 1100 (1995).

2. *Merits*

Pointing to a list of evidence, Mr. Stiger concludes that the "cumulative and prejudicial impact" of that testimony requires severance. Noting the strong preference for joint trials of coconspirators, the government argues that, as a member of the conspiracy, Mr. Stiger was liable for its violent acts. Moreover, the government asserts that Mr. Stiger was himself heavily involved in the violent torture of Ms. Natale. Further, the government contends that he suffered no prejudice from the denial of severance.

Mr. Stiger cannot establish reversible error. Even if he could show that the District Court abused its discretion in denying his motion to sever, he cannot make "a strong showing of prejudice." *Evans*, 970 F.2d at 676. "Prejudice occurs when there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Edwards*, 69 F.3d 419, 434

- 22 -

(10th Cir. 1995) (internal quotations omitted). As noted above, *see supra* pp. 2-3, the government introduced extensive evidence at trial proving Mr. Stiger's involvement in the conspiracy. In light of this evidence, Mr. Stiger has failed to make a strong showing of prejudice, and we affirm the decision of the District Court.

F.      Summary Witness Testimony

1.      *Standard of Review*

Mr. Stiger next argues that the District Court erred in allowing Officer Harold Adair to present summary testimony and exhibits. "We review a district court's evidentiary rulings for abuse of discretion." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Mitchell*, 113 F.3d 1528, 1531 (10th Cir. 1997). Even if we find that the District Court erred, we must also determine whether the error "affect[ed] substantial rights," i.e., whether it is "harmless error." Fed. R. Crim. P. 52(a). [9]

---

[9]Mr. Stiger, for the first time on appeal, also argues that the admission of the summary testimony violated his Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Because he never raised that objection before the District Court, we review it for plain error. *United*
(continued...)

2.      *Merits*

Mr. Stiger challenges the admission of five exhibits and the accompanying testimony. First, Mr. Stiger objects to a chart offered by Officer Adair that purported to detail the organizational structure of the conspiracy. Officer Adair testified that he constructed this chart both from trial testimony and from interviews conducted during the investigation. On appeal, Mr. Stiger reasserts his contention that Officer Adair gleaned much of his testimony from sources not admitted at trial. As such, he urges that the summary testimony and charts were inadmissable hearsay. In response, the government claims that the District Court properly admitted the testimony and charts as expert testimony pursuant to Fed. R. Evid. 702. The government also notes that many courts have allowed summary testimony and charts pursuant to Fed. R. Evid. 611(a), finding them to be helpful to the jury.

As this Court has noted, a party may only admit summary testimony under Fed. R. Evid. 611(a) if the District Court previously admitted at trial the evidence

---

[9](...continued)
*States v. LaHue*, 261 F.3d 993, 1009 (10th Cir. 2001) ("Where a Confrontation Clause objection is not explicitly made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue sua sponte.") (alteration and internal quotations marks omitted). Seeing that there is "overwhelming and essentially uncontroverted" evidence of his guilt as to the charged or a closely linked crime, *see United States v. Gonzalez Edeza*, 359 F.3d 1246, 1251 (10th Cir. 2004), he cannot satisfy that standard.

that forms the basis of the summary. *See United States v. Ray*, 370 F.3d 1039 (10th Cir. 2004), *vacated on other grounds by* 125 S. Ct. 995 (Jan. 24, 2005). Because Officer Adair's own testimony indicates that he constructed the organizational chart from non-trial sources, the District Court could not have properly admitted it pursuant to Fed. R. Evid. 611(a). We need not decide, however, whether it fell within the ambit of some other evidentiary rule because any possible error did not substantially influence the outcome of the trial. *See Magleby*, 241 F.3d at 1318; *see also supra* pp. 2-3.

Second, Officer Adair offered a time line illustrating the trips taken by the members of the conspiracy and the specific drugs transported on those trips. Officer Adair testified that he prepared the time line solely from evidence admitted at trial. Mr. Stiger did not object to the admission of the time line, but did object to a portion of Officer Adair's accompanying testimony as going beyond the evidence admitted at trial. The District Court sustained that objection, re-instructed the government that "[t]his is a summary of the evidence, not a summary of the investigation," and redacted the objected-to evidence. Because the District Court sustained Mr. Stiger's objection at trial, there is no error to correct on appeal.

Third, Officer Adair offered a chart of the total drug amounts testified to at trial. He testified that the chart was based exclusively on evidence admitted at

trial. Mr. Stiger lodged an ambiguous objection against the chart. Reviewing the record evidence, we find that the District Court properly admitted the chart pursuant to Fed. R. Evid. 611(a) because it was undoubtedly helpful to the jury in this particularly complex case, the District Court offered extensive limiting instructions, and the chart was based exclusively on previously admitted evidence. *See Ray*, 370 F.3d at 1046–48.

Finally, Officer Adair offered two other charts, one detailing the specific drug amounts attributable to each defendant and another illustrating the drug prices charged by the conspiracy in various transactions. He testified that both charts were based exclusively on previously admitted evidence. Mr. Stiger did not object to the introduction of either chart nor to the accompanying testimony at trial. "We review the district court's ruling admitting evidence . . . if no objection is made, for plain error." *United States v. Castorena-Jaime*, 285 F.3d 916, 931 (10th Cir. 2002). Mr. Stiger cannot satisfy that standard. *See United States v. Gonzalez Edeza*, 359 F.3d 1246, 1251 (10th Cir. 2004) (holding that when "overwhelming and essentially uncontroverted" evidence of guilt exists as to the charged or a closely linked crime, the plain error standard is not met); *see also supra* pp. 2-3.

G.    Speedy Trial Act

1.    *Standard of Review*

Finally, Mr. Stiger argues that the District Court erred in concluding that the Speedy Trial Act, 18 U.S.C. § 3161 et seq., does not apply to an information filed pursuant to 21 U.S.C. § 851(a)(1). We review the District Court's interpretation of this statute de novo. *United States v. Alahmad*, 211 F.3d 538, 541 (10th Cir. 2000).

2. *Merits*

On April 30, 2002, the government filed an information pursuant to § 851(a)(1), notifying Mr. Stiger of its intent to use his prior felony convictions to enhance any sentence resulting from the current prosecution. On July 11, 2002, Mr. Stiger filed a motion to dismiss this information, claiming that the Speedy Trial Act required the government to commence trial against him on the § 851(a)(1) information within seventy days of its filing. The District Court denied his motion, finding that the "plain language" of the "Speedy Trial Act only applies to informations and indictments which charge 'the commission of an offense.'" For the reasons provided in a companion case, we affirm the District Court's Speedy Trial Act ruling. *See United States v. Vaughn*, 370 F.3d 1049, 1054–55 (10th Cir. 2004).

## III. CONCLUSION

Therefore, we AFFIRM the judgment of the District Court except as to the mistrial claim, which we REVERSE and REMAND with instructions to hold an

evidentiary hearing in accordance with this opinion. Our opinion in *Stiger I* is VACATED.