**F I L E D**

**UNITED STATES COURT OF APPEALS**

**March 30, 2007**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 06-3252 |
| v. | (D. Kansas) |
| THEOGEN EDWARD GARNER, | (D.C. No. 05-CR-20094-CM) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

Theogen Garner was convicted in the United States District Court for the

District of Kansas on one count of possession with intent to distribute more than

50 grams of cocaine base within 1,000 feet of a public university. *See* 21 U.S.C.

§§ 841(a), 860(a). Because he had two prior convictions for felony drug offenses,

the district court sentenced him to a mandatory term of life imprisonment

followed by 10 years' supervised release. *See* 21 U.S.C. § 841(b)(1)(A).

Mr. Garner appeals his conviction and sentence, arguing (1) that evidence

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

obtained during a traffic stop should have been suppressed because officers unreasonably extended it in violation of the Fourth Amendment; (2) that there was insufficient evidence to show that what he possessed was more than 50 grams of a single substance containing cocaine base; (3) that the district court violated the Sixth Amendment in admitting certain evidence to prove his prior convictions; (4) that the district court violated his Sixth Amendment rights when it, rather than a jury, found the fact of his prior convictions; and (5) that the district court subjected him to double jeopardy when it granted a continuance during the sentencing hearing to permit the government to seek additional evidence. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Officer Ryan Fulks was patrolling the University of Kansas campus shortly after 1:00 a.m. on July 21, 2005, when he noticed a slow-moving pickup truck weaving in its lane. The truck did not have a light illuminating its license plate, an equipment violation under Kansas law. Fulks therefore conducted a traffic stop. He asked the driver for his license and identification. The driver, whom the license identified as Theogen Garner, was accompanied by a female passenger. Fulks returned to his patrol car and ran a check on Mr. Garner's license. Dispatch informed him that Mr. Garner was on supervised release from the Kansas Department of Corrections (DOC), so that he would need to conduct a field interview and provide a report to the DOC.

Officer Fulks requested backup and Officer Mark Brinkworth arrived within 20 seconds. Fulks approached the pickup truck on the driver's side, while Brinkworth approached on the other. As Fulks began to explain to Mr. Garner that he was going to conduct a field interview, Brinkworth noticed an object on Mr. Garner's right ear and asked what kind of cigarette it was. After first responding, "oh, that's just left over from a Black & Mild," R. Vol. II at 11, Mr. Garner briefly paused and then stated that it was marijuana. He removed the object from behind his ear and handed it to Fulks. The resulting investigation eventually led to the discovery of a baggie of cocaine in Mr. Garner's pocket and a bag of cocaine in his truck. The baggie in his pocket contained several rocks with a total weight of 13.35 grams. The bag in his truck also contained several rocks; their total weight exceeded 82 grams.

A grand jury indicted Mr. Garner on one count of violating 21 U.S.C. § 860(a). Also, the government filed an information alleging that Mr. Garner had two prior convictions for felony drug offenses. The information provided notice that the government would request an enhanced sentence based on these convictions if Mr. Garner was convicted on the indictment.

Before trial Mr. Garner moved to suppress the evidence on the ground that his detention to conduct a field interview violated the Fourth Amendment. The district court denied the motion.

At trial Bradley Crow, a forensic scientist, testified that the substance in the bag in Mr. Garner's pocket weighed 13.35 grams. His random test of one of several rocks in the bag showed that it contained cocaine base. He also tested a random sample of the 82.31 grams of substance from the bag found in Mr. Garner's truck and determined that it too contained cocaine base. He testified that the methods he used to determine that the samples contained cocaine base were scientifically accepted, and that he did not need to test each rock in each bag because all were the same color and texture as the samples he had randomly selected.

At the close of the government's case, Mr. Garner moved for judgment of acquittal, arguing that the evidence was insufficient because Mr. Crow had tested only a small sample of the substances found during the arrest and not a single rock containing cocaine was shown to weigh 50 grams. The district court denied the motion, and the jury found Mr. Garner guilty.

Before sentencing, Mr. Garner responded to the government's information alleging two prior drug convictions. He asserted that he was not the person who had been convicted. He pointed out that the person convicted was Theog*a*n Garner and that his name is Theog*e*n Garner. He further argued that the fact of any prior convictions must be tried to a jury. At the sentencing hearing on May 30, 2006, Mr. Garner unsuccessfully argued that the evidence used to prove that he was the person convicted of the prior crimes should be limited to the

charging documents and admissions in those cases. The government offered fingerprint cards and a fingerprint expert to establish identity. During the hearing, however, the government realized that one of the fingerprint cards it was using was from an irrelevant arrest. The district court continued the hearing to allow the government time to gather additional evidence.

At the reconvened hearing on June 23, 2006, the government offered further fingerprint evidence and documents from the DOC website. The district court found that the government had met its burden of showing that the Theogan Garner convicted of the prior drug offenses was the same individual as the Theogen Garner in the case before it. It sentenced him to life imprisonment followed by 10 years' supervised release.

## II. DISCUSSION

### A. Motion to Suppress

Mr. Garner argues that the district court erred in denying his motion to suppress evidence because his detention was unreasonably extended by the field interview for the DOC. We disagree.

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Apperson*, 441 F.3d 1162, 1184 (10th Cir. 2006) (internal quotation marks omitted). A traffic

stop is a seizure to which the protections of the Fourth Amendment apply, *see United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1257 (10th Cir. 2006), and is therefore permissible only "if the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred or is occurring." *Id*. at 1257–58 (internal quotation marks omitted). "[T]he reasonableness of a traffic stop depends on both [its] length . . . and the manner in which it is carried out." *Id*. at 1258 (internal quotation marks omitted). "'A traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided that those questions do not unreasonably extend the amount of time that the subject is delayed.'" *Id*. at 1259 (quoting *United States v. Martin*, 422 F.3d 597, 601-02 (7th Cir. 2005)).

Mr. Garner does not contend that the initial stop was invalid. His sole argument is that conducting a DOC field interview was unrelated to the purpose of the stop and was therefore unreasonable. But we need not decide whether it is permissible to prolong a stop to conduct a full field interview, because the prolongation in this case was minimal, if not nonexistent. Officer Fulks did not ask a single question as part of such an interview. It was while he was explaining that he would be conducting a field interview that Officer Brinkworth saw the marijuana cigarette and redirected the conversation. The "field interview" certainly did not unreasonably extend the duration of the stop. Even if we assume that Brinkworth's presence was required only for the field interview, he arrived

within a few seconds of Fulks's request; so any delay caused by waiting for his arrival did not unreasonably prolong the detention.

## B.      Insufficient Evidence

Mr. Garner argues that the district court erred in denying his motion for judgment of acquittal because the government failed to establish that any single rock was a substance that weighed more than 50 grams and contained cocaine base. We review challenges to the sufficiency of the evidence de novo, viewing "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." *United States v. Gurule*, 461 F.3d 1238, 1242–43 (10th Cir. 2006) (internal quotation marks omitted). The evidence is sufficient if a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *See id*.

When proving the quantity of drugs, the government must establish that a sampling technique used to determine the existence and quantity of drugs is reasonably reliable. *See United States v. Dent*, 149 F.3d 180, 190–91 (3d Cir. 1998). A technique is reasonably reliable if "(1) a proper random selection procedure was employed; (2) the chemical testing method conformed with an accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized from the same search site." *United States v. Scalia*, 993 F.2d 984, 989 (1st Cir. 1993) (internal quotation marks omitted); *see United*

*States v. McCutchen*, 992 F.2d 22, 24–26 (3d Cir. 1993). The government adequately established such reliability in this case. All the evidence was seized from the same site at the same time. And Mr. Crow, the forensic scientist, testified that he had selected a random sample from each of the bags; that the thin-layer-chromatography and infrared-spectrophotometry tests he performed were scientifically accepted and reliable tests; and that the rocks in the bags had "the same type of coloring [and] texture" as the tested samples and he "had no reason to believe" that they would have a different composition. R. Vol. III at 123.

Mr. Garner contends, however, that each rock was a single substance, and that the government should have had to prove that at least one of the rocks containing cocaine base individually weighed more than 50 grams. But this argument fails. The general rule is that a quantity of drugs found together is considered a single unit for purposes of prosecution. *See United States v. Johnson*, 977 F.2d 1360, 1374 (10th Cir. 1992). Although "various stashes of [a] drug are considered separate where the evidence indicates that they were intended for different purposes or transactions," *id.*, Mr. Garner makes no claim of such differences, and such a claim would be absurd with respect to the individual rocks among those in the bag with a total weight of more than 82 grams.

### C. Sentencing Challenges

Before trial the government, in accordance with 21 U.S.C. § 851, filed an information notifying Mr. Garner that it intended to seek a sentencing enhancement under 21 U.S.C. § 841(b)(1)(A). "Section 841(b)(1)(A) requires imposition of a mandatory term of life imprisonment without release if (1) a defendant is convicted of violating § 841(a), (2) that conviction involved a certain requisite amount of drugs, and (3) the crime was committed after two or more prior convictions for a felony drug offense have become final." *United States v. Stiger*, 413 F.3d 1185, 1191 (10th Cir. 2005) (internal quotation marks omitted). The jury found Mr. Garner guilty of possessing with intent to distribute more than 50 grams of cocaine base within 1,000 feet of the University of Kansas. This conviction satisfied the first and second requirements of § 841(b)(1)(A); Mr. Garner's three sentencing challenges relate to the third.

### 1. Identity

Mr. Garner challenges the evidence used to establish that he was the person convicted of the two prior felony offenses stated in the information. He does not argue that the evidence presented was insufficient to prove identity. Rather, he contends that the Sixth Amendment limits the government to using only the charging documents and admissions by the defendants in the prior cases. Because he raised this argument at sentencing, our review is de novo. *See id.*, 413 F.3d at 1191.

Mr. Garner contends that under *Shepard v. United States*, 544 U.S. 13 (2005), the government's proof of the facts underlying the prior convictions is limited to the charging documents, plea colloquies, and admissions in the prior cases, and that the identity of the person convicted is a fact underlying the conviction. But *Shepard*, which was decided as a matter of statutory interpretation and not on Sixth Amendment grounds, was concerned with determining *what* prior crime the defendant had been convicted of, not *whether* he is the person who had been convicted. The Supreme Court ruled that the only proper means to determine the offense of conviction would be to examine the charging documents, although admissions by the defendant at the prior proceeding (such as admissions during the plea colloquy) could also be considered. *Shepard* makes sense because the issue it addresses is not what the defendant *did* but what he was *convicted* of, and this latter issue can be resolved only on the basis of what the jury had been asked to decide.

Here, however, the issue is whether the defendant is the same person convicted of the prior crime. To limit evidence of identity to the documents permitted by *Shepard* would be to preclude proof of identity in virtually all cases. The factfinder would have to resolve identity based on only the *name* of the defendant in the prior case. If a judge is to determine whether the defendant is the person convicted in the prior proceedings—and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), says that this is permissible—the judge must be able to

-10-

consider evidence beyond that allowed by *Shepard*. Indeed, the necessary and appropriate evidence will be fingerprints, photographs, and other evidence from law-enforcement and correctional-institution files, just what was used in this case. Accordingly, we reject Mr. Garner's contention.

### 2. Fact-Finding by Judge

Mr. Garner argues that his Sixth Amendment rights were violated because the fact of his prior convictions was found by the judge rather than a jury. He concedes that our current precedent is contrary to his view, and states that he is raising the "issue to preserve it for a possible certiorari petition." Aplt. Br. at 14. Because it is well established that "the fact of a prior conviction may be found by a sentencing judge," *Stiger*, 413 F.3d at 1192, we reject this argument.

### 3. Double Jeopardy

Finally, Mr. Garner argues that the district court subjected him to double jeopardy when it continued his sentencing hearing to permit the government to obtain more evidence establishing that he had committed prior felonies. He ties this argument to his assertion that prior convictions must be proved to a jury, stating, "If prior convictions must be proven to a jury beyond a reasonable doubt . . . , then the Government should only get one chance to prove such convictions." Aplt. Br. at 16.

His argument fails in at least two respects: (1) as we have just stated, prior convictions do not have to be proved to a jury, *see Stiger*, 413 F.3d at 1192; and

-11-

(2) the protections against double jeopardy do not apply to noncapital sentencing hearings, *see Monge v. California*, 524 U.S. 721, 728 (1998). We therefore reject this argument.

## III. CONCLUSION

Mr. Garner's conviction and sentence are AFFIRMED.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge