**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENNETH WAYNE STIGER,

    Defendant - Appellant.

No. 06-5213

(N.D. Oklahoma)

(D.C. No. CR-00-126-HDC)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Defendant/appellant Kenneth Wayne Stiger appears before this court for the third time, following his conviction on one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, and one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). On this occasion, Stiger appeals the denial of his motion for a mistrial. We affirm.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

The basic facts underlying Stiger's conspiracy convictions were summarized in one of our prior opinions as follows:

> This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy. As the government proved at trial, the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan.
>
> At trial, several witnesses testified to Mr. Stiger's involvement in the conspiracy. Specifically, these witnesses testified to seeing Mr. Stiger prepare marijuana for shipping, arrange for and assist in the transportation of marijuana and cocaine, and transfer and instruct other to transfer large amounts of money to Mr. Bellamy.

United States v. Stiger, 413 F.3d 1185, 1189 (10th Cir.) ("Stiger II"), cert. denied, 546 U.S. 1049 (2005).

Stiger was indicted on charges of conspiracy to possess and distribute marijuana, cocaine and crack cocaine over a period of time between 1993 and 2001. Richard Taylor was one of Stiger's co-defendants.

On April 30, 2001, R. Thomas Seymour, of the Seymour Law Firm, was appointed to represent Taylor. On July 30, 2001, Robert Burton, of the Seymour Law Firm, was also appointed to represent Taylor. In August of 2001, Taylor pled guilty to certain counts of the indictment and was sentenced to sixty-three months' imprisonment. Taylor also agreed to testify as a witness for the government.

Stiger proceeded to trial on the charges in the indictment. At the trial, Taylor testified about Stiger's role in the conspiracy. During the second day of Taylor's testimony, Stiger's attorney, Mark Matheson, informed the court as follows:

> Your Honor, it came to my attention yesterday that Robert Burton, who works for Thomas Seymour, and Thomas Seymour represents Mr. Taylor, he came up to visit my client three times before this trial started to try and get his business, once in Wichita, once in Oklahoma City and once in Tulsa, and they had discussion [sic] about the case, and I don't know if that's going to be prejudicial to my client or not, but they work in the same law firm.

Tr. of Trial at 1630, R. Vol. III. Matheson informed the court that he did not know the content of the conversations between Burton and Stiger, nor if they were prejudicial. Matheson made a motion for a mistrial based upon an alleged conflict of interest between Burton's and the Seymour Law Firm's representation of Taylor and Burton's conversations with Stiger about representing him (Stiger).[1] The district court overruled the motion.

Following the jury trial, which lasted for twenty-three days and involved more than fifty witnesses, Stiger was convicted and sentenced to life

---

[1] Stiger's counsel characterized the alleged conflict as follows: "it's obviously a conflict of interest if [Burton] goes and talks to one client that's on this indictment and then turns around and represents another one, that's a conflict of interest on the attorney's part." Tr. of Trial at 1631, R. Vol. III. Stiger's counsel also alleged several times that it was "prejudicial" to his client if Stiger revealed confidential information about his case to Burton, who in turn divulged that information to Seymour, who in turn divulged that information to Taylor, who was testifying against Stiger during the trial.

imprisonment on the conspiracy to distribute controlled substances count and to twenty years' imprisonment on the conspiracy to launder money count, with the sentences to run concurrently. Stiger appealed, and we affirmed his conviction but remanded the case to the district court for an evidentiary hearing to resolve the claim for a mistrial relating to an alleged conflict of interest based upon Burton's and the Seymour Law Firm's representation of co-defendant Taylor. United States v. Stiger, 371 F.3d 732 (10th Cir. 2004) ("Stiger I"), vacated on reh'g, 413 F.3d 1185 (10th Cir.), cert. denied, 546 U.S. 1049 (2005). On Stiger's petition for rehearing of Stiger I, we granted the petition for rehearing on the basis of the Supreme Court's intervening decision in United States v. Booker, 543 U.S. 220 (2005). We again affirmed Stiger's conviction, but again remanded to the district court with instructions to hold an evidentiary hearing on the mistrial claim. Stiger II, 413 F.3d 1185.

The district court conducted an evidentiary hearing, at which Burton, Seymour and Tulsa attorney Brad Fuller testified,[2] as well as Stiger. At the conclusion of the hearing, the district court made detailed findings of fact and conclusions of law, and determined that "neither an actual nor an implied attorney client relationship exists between defendant Kenneth Stiger and Tulsa attorney

_____

[2]Family members of Stiger initially contacted Fuller to ask about legal representation for Stiger. Because Fuller did not have extensive criminal defense experience, he contacted Burton, who informed him that the Seymour Law Firm was already representing Taylor.

Robert Burton and the R. Thomas Seymour law firm which would warrant a motion for mistrial or an untimely motion to disqualify counsel. Further, from a review of the record in this case, the Court further finds and concludes that defendant Kenneth Stiger was not denied the 'right to a fair and impartial trial.'" Order at 13, R. Vol. I, tab 998. The court accordingly denied Stiger's motion for a mistrial. This appeal followed.

## DISCUSSION

"In determining whether to grant a mistrial, a district judge must first determine whether an error has occurred and, if so, whether that error impaired the 'defendant's right to a fair and impartial trial.'" Stiger II, 413 F.3d at 1194 (quoting United States v. Meridyth, 364 F.3d 1181, 1183 (10th Cir. 2004)). "We review a district court's refusal to grant a mistrial for abuse of discretion." Id. (further quotation omitted). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." Id. (further quotation omitted).

Stiger argues the district court erred in failing to grant his motion for a mistrial because he told Burton confidential information based upon the existence of an attorney-client relationship between himself and Burton, which conflicted with the representation of co-defendant Taylor by the Seymour Law Firm. We

discussed the formation of the attorney-client relationship and the existence of potential conflicts flowing therefrom in Stiger II. We examined Stiger's motion for a mistrial and considered it as also raising a motion to disqualify the Seymour Law Firm from representing Stiger's co-defendant, Taylor. We noted that "[t]wo sources inform whether a district court should disqualify an attorney. 'First, attorneys are bound by the local rules of the court in which they appear. . . . . Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.'" Id. at 1195 (quoting Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1383 (10th Cir. 1994)).

Applying the Oklahoma Rules of Professional Conduct, we noted that "a party seeking to disqualify opposing counsel must establish [inter alia] that . . . an actual attorney-client relationship existed between the moving party and the opposing counsel" and that the interests of co-defendant Taylor were "materially adverse" to those of Stiger. Id. at 1196 (further quotation omitted).[3] Thus, the

_____

[3]In Stiger II, we discussed and applied Oklahoma Rule of Professional Conduct 1.9, which governs conflicts of interest involving former clients. The government suggests that Rule 1.7, governing conflicts of interest involving current clients, applies to this case, rather than 1.9. We note simply that Rules 1.7 and 1.9 cover a variety of situations involving conflicts of interest relating to current and former clients. The commentary to Rule 1.7 provides that "[w]here more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9." Comment, Okla. R. Prof. Conduct 1.9. We need not plumb the depths of the Oklahoma Rules of Professional Conduct to

(continued...)

-6-

initial question is whether an attorney-client relationship existed between Stiger and Burton/the Seymour Law Firm. "To show that an attorney-client relationship existed, Mr. Stiger need not show that 'the parties . . . executed a formal contract' or that he paid fees. Mr. Stiger need only 'show that (1) [he] submitted confidential information to a lawyer and (2) [he] did so with the reasonable belief that the lawyer was acting as [his] attorney.'" Id. (quoting Cole, 43 F.3d at 1384).

As indicated, the district court conducted an evidentiary hearing and then made factual findings based upon the testimony and evidence presented at the hearing. The district court found credible the testimony by all three attorneys involved (Fuller, Burton and Seymour) that their conversations with Stiger were brief and directed to determining whether Stiger could afford to hire their services and to making sure Stiger understood that a conflict waiver would be necessary before he could retain their legal services. The court further found credible their testimony that they did not discuss with Stiger any substantive or confidential details concerning his case, nor did the attorneys impart any legal advice to Stiger. On the other hand, the court found not credible Stiger's testimony that he

_____

[3](...continued)
determine exactly which rule governs, since all parties agree that the crucial initial question in this case is whether an attorney-client relationship developed between Burton/the Seymour Law Firm and Stiger, and that would be the initial question under either Rule 1.9 or 1.7.

revealed confidential details about his case to Burton and/or Fuller and/or Seymour.

The district court made multiple, detailed factual and credibility findings which are amply supported by the record and are not clearly erroneous. We therefore affirm the district court's conclusion "that an attorney client relationship did not exist between defendant Stiger and Mr. Burton or the Seymour law firm." Order at 11. We further agree with the district court that the record in this case reveals that neither the Seymour Law Firm's representation of co-defendant Taylor nor any contact and/or conversations between Burton/the Seymour Law Firm and Stiger affected Stiger's right to a fair and impartial trial.

## CONCLUSION

For the forgoing reasons, the district court's order denying Stiger's motion for a mistrial is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge