**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 3 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAVID BUSBY,

      Defendant-Appellant.

00-5014
(99-CR-20-K)
(Northern District of Oklahoma)

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

KENNETH MAURICE WOODS,

      Defendant-Appellant.

00-5043
(99-CR-20-K)
(Northern District of Oklahoma)

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROBERT EDWIN ESKRIDGE,

      Defendant-Appellant.

00-5044
(99-CR-20-K)
(Northern District of Oklahoma)

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MICHAEL McCALISTER,

     Defendant-Appellant.

00-5107
(99-CR-20-K)
(Northern District of Oklahoma)

---

## ORDER AND JUDGMENT[*]

---

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Circuit Judge, and **MILLS**,[**] District Judge.

---

In a second superceding indictment filed in the United States District Court for the Northern District of Oklahoma, Sidney Ronnell Iiland ("Iiland"), David Busby ("Busby"), Kenneth Maurice Woods ("Woods"), Robert Edwin Eskridge ("Eskridge"), Michael McCalister ("McCalister"), and others, were jointly charged with various drug and drug related offenses. Some defendants entered into plea agreements, and two were never

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Richard H. Mills, Senior District Judge, United States District Court for the Central District of Illinois, sitting by designation.

apprehended.  In a jury trial, Busby was convicted of several offenses.  In a separate jury trial, Iiland, Woods, Eskridge and McCalister were jointly tried, and all were convicted of various drug offenses.

Iiland, Busby, Woods, Eskridge and McCalister have each filed separate appeals and are represented in this Court by different counsel.  On November 16, 2000, oral argument was heard by this Court from counsel for Busby, Woods and McCalister, as well as from government counsel.  Counsel for Iiland and Eskridge waived oral argument and by order of this Court their appeals were submitted on the briefs.  Four of the five appellants, namely, Busby, Woods, Eskridge, and McCalister are companioned for the purpose of disposition, although each will be considered *seriatim*.  Iiland's appeal will be treated separately.

## No. 00-5014, United States v. Busby

Busby was charged in the superceding indictment with conspiracy to possess with intent to distribute, and distribution of controlled drugs, use of a firearm during a drug trafficking crime, possession with intent to distribute a controlled substance and maintaining a place for the purpose of distributing a controlled substance.  Busby, in a jury trial, was tried and convicted of all counts except conspiracy which the government dismissed.  Busby was sentenced to 211 months imprisonment, supervised release of five years and a fine of $2000.

On appeal, Busby, who was tried separately from the other appellants, argues that

the district court erred in two particulars: (1) the district court erred in denying his pre-trial motion to suppress wiretap evidence allegedly obtained in an illegal telephone tap, and (2) the district court also erred in denying his motion to suppress certain inculpatory statements made by him to police officers. We find no reversible error and therefore affirm Busby's several convictions and the sentences imposed thereon.

On September 23, 1998, upon application of the Assistant United States Attorney for the Northern District of Oklahoma, which was supported by a fifty six page affidavit, the district court issued an order authorizing the interception of wire communication for no more than 30 days to and from the telephone located at 316 West 13th Street, Apartment #1, Tulsa, Oklahoma, which phone was "subscribed to in the name of Latrice Edmond . . . hereinafter the target telephone." On October 23, 1998, the district court, again upon application of the Assistant United States Attorney, extended the prior order for up to 30 days on the same "target telephone" identified in the original order of authorization.

Although we cannot find it in the record on appeal, prior to his trial, Busby apparently filed a pretrial motion to suppress the use at trial of the evidence obtained through the wire interceptions, which included several telephone calls by Busby to the target telephone, and some from the target telephone to Busby. Hearing on Busby's motion to suppress was held on August 16, 1999. At the outset of the hearing, counsel, and the court, were in apparent agreement that a wiretap authorization order is presumed

- 4 -

proper and that a defendant in a criminal proceeding bears the burden of overcoming this presumption. *United States v. Mondragon,* 52 F.3d 291, 292 (10th Cir. 1995); *United States v. Green*, 175 F.3d 822 (10th Cir. 1997). In any event, counsel for Busby called as his one and only witness Christopher Peters, a special agent of the Federal Bureau of Investigation, who was examined and cross-examined, at length, regarding the wiretap orders and the applications therefor. Peters was the affiant in each application. At the conclusion of this hearing, the district court denied Busby's motion. The district court first observed that Busby "had failed to reach the threshold of rebutting the presumption that the order and its extension were proper." The district court then went on to discuss in some detail the other aspects of the matter. On appeal, counsel's initial argument is that the district court erred in denying Busby's motion to suppress the wiretap evidence. We do not agree.

As we understand it, Busby's challenge is to the extension order of October 23, 1998, and not to the initial wiretap order of September 23, 1998. The challenge of the extension order is based on counsel's belief that there was "no necessity" for an extension order, at least as such relates to Busby, since Busby became known, or could have been known, to the authorities during the 30 day period authorized by the order of September 23, 1998. That is not the way we read the record. At the hearing on the motion to suppress, counsel for Busby called one witness, Christopher Peters, the special agent for the Federal Bureau of Investigation. Agent Peters testified that Busby's identity was not

made during the initial 30 day period but only well after the extension order was entered. It would appear that in the initial 30 day period there may have been telephone calls involving the target telephone and Busby, but Busby's identity was not established until after the issuance of the extension order. It is our understanding that, during the time of the wiretap, there were about 3200 calls to and from the target telephone and that only 310 were deemed pertinent and recorded. In any event, the application for the wiretap and the application for the extension thereof were sufficient to meet the "necessity" requirement. The statutory requirements concerning necessity, 18 U.S.C. §§ 2518(1)(c), (3)(c), must be read in a "common sense fashion" and do not require law enforcement officials to exhaust all conceivable procedures before seeking a wiretap. *See United States v. Nunez,* 877 F.2d 1470, 1472 (10th Cir. 1989); *United States v. Apodaca,* 820 F.2d 348, 350 (10th Cir. 1987) *cert. denied* 484 U.S. 903 (1987).

Busby also challenges on appeal the district court's denial of his motion to suppress statements made by him at the time of his arrest to Officers Parsons and Francetic of the Tulsa Police Department. A hearing on this motion was held just before commencement of the actual trial – out of the presence of the jury. Counsel for Busby called two witnesses in support of that motion, Officers Parsons and Francetic. Parsons testified that shortly after Busby's arrest, he advised Busby of his *Miranda* rights and questioned him briefly, at which point Busby indicated that he did not want to talk further with Parsons. There was some indication that because of some real, or fancied,

- 6 -

"personality conflict," Busby simply did not want to talk with Parsons. In any event, after a few questions about a key ring, Busby was turned over to Parsons' supervisor, Corporal Francetic. The latter testified that he advised Busby again of his *Miranda* rights and that Busby then voluntarily gave him information about a rented storage unit where contraband was later found. Francetic testified that Busby later stated the contents of the storage unit were his, and not his girlfriend's.

Counsel argues that the officers continued to question Busby after he had indicated that he wanted to discontinue all dialogue with the police and that his subsequent statements concerning the storage unit and his girlfriend were involuntary. We do not agree. The testimony of Officers Parsons and Francetic amply supports the district court's holding that, all things considered, Busby's statements to the local police were voluntary. *United States v. Lewis*, 24 F.3d 79 (10th Cir. 1994).

It is on this basis that we conclude that the district court did not err in denying Busby's motions to suppress evidence gained by the wiretap and his statements to the police officers at the time of his arrest.

Judgment affirmed.

### No. 00-5044, United States v. Eskridge

Eskridge was jointly tried with Iiland, Woods, and McCalister and the jury convicted him of conspiracy, 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and a continuing criminal enterprise in violation of 21 U.S.C. §§ 846, 848. He was later sentenced to imprisonment

for 420 months on each conviction, to be served concurrently and certain monetary assessments.  Eskridge appeals.  We affirm.

On appeal, Eskridge raises two issues, both relating to evidentiary rulings made by the district court during a trial which extended over several weeks: (1) the district court erred in admitting, over objection, "co-conspirator hearsay" by government witness David Andrew Sump ("Sump"), and (2) the district court erred by admitting so-called "non-scientific expert testimony" by government witness Harold Clouse ("Clouse"), an FBI document expert.  We find no error.

By the second superceding indictment, Eskridge was charged, *inter alia,* with conspiracy to possess and distribute drugs in the Tulsa area from 1991 to the date when the indictment was returned, namely February 26, 1999.  Sump was permitted to testify about a meeting he had with Eskridge in 1995 at the latter's residence in Tulsa, Oklahoma, which residence was that of Eskridge's mother, as well.  Several others were present at Eskridge's residence on that occasion.  As indicated, the district court, over objection, allowed Sump to testify as to events occurring at that time and place.  Sump testified, *inter alia,* that shortly prior thereto he and others had transported drugs from California to Tulsa and that he first met, or at least saw, Eskridge at the time and place of delivery in Tulsa.  Sump testified as to certain face-to-face conversations he had with Eskridge at his residence and also testified as to certain comments made by others in attendance when Eskridge was out of earshot, so to speak, to the effect that Eskridge was

in charge of the "Tulsa operation." Sump also testified that on that particular occasion, Eskridge escorted and unidentified person out of the room and that he, Sump, "heard" Eskridge administer a severe beating to the other person who apparently had failed to turn over certain drug monies.

Apparently all concerned recognize the exception to the hearsay rule which permits the statements of a co-conspirator made in furtherance of a conspiracy to be used against a defendant co-conspirator who was not present when the statements were made. Statements made by Eskridge to, or overheard, by Sump, are not hearsay. Fed. R. Evid. 801(d)(2)(E). Statements made by others when Eskridge was not physically present would appear to us to come within the hearsay exception. The testimony regarding the beating administered by Eskridge to an underling who had not accounted for monies due Eskridge was not, in our view, hearsay.

As concerns witness Clouse, he merely identified certain "records" obtained during the police investigation of the conspiracy as being "consistent" with and in the "format" of an "illegal drug organization's record keeping." Clouse was examined closely as to his background, training and general qualifications to make such examinations and form opinions in connection therewith. We find no error on the part of the district court in permitting such line of authority. In permitting Clouse to so testify, the district court did not offend *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) or *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Further, neither Sump nor Clouse were, in our view, "key" witnesses in this case. Their testimony merely tended to corroborate testimony of others. The government called some thirty one witnesses, which included co-conspirators, and some indicted co-conspirators, who directly implicated Eskridge in what the government aptly describes as "a large scale poly drug conspiracy spanning several years."

Judgment affirmed.[1]

### No. 00-5043, United States v. Woods

In the second superceding indictment Woods, also known as "Kool-Aid," was charged in Count I with conspiring with McCalister, Iiland, Busby, Eskridge and others to possess controlled substances with an intent to distribute in violation of 21 U.S.C. § 846. The "Objects of the Conspiracy" as set forth in Count I were to possess and distribute cocaine and cocaine base, methamphetamine, marijuana and heroin. One hundred thirty-two "overt acts" were also set out in the indictment. In Count XI of the indictment Woods and one Arnold Ray Simon were charged with distributing on June 6, 1996, a quantity of heroin in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(C). As indicated Woods was jointly tried with McCalister, Iiland, and Eskridge, and the jury found him

---

[1]Subsequent to oral argument, Eskridge filed with this Court a *pro se* reply brief and two *pro se* supplemental briefs. In his *pro se* reply brief Eskridge challenges the government's statement of the facts in several particulars. In his supplemental briefs Eskridge raises, *inter alia*, the *Apprendi* issue (*Apprendi v. New Jersey*, 530 U.S. 466, 2000), which is discussed by us in Woods' appeal, *infra.* We are not persuaded by any of the matters sought to be raised in the supplemental briefs, some of which are raised for the first time.

guilty on both counts. The district court sentenced Woods to imprisonment for 216 months on each count to run concurrently. Woods was also sentenced to five years supervised release. He appeals from the convictions and sentence imposed thereon.

In his opening brief in this court counsel urges eight grounds for reversal. They are as follows: (1) There was a prejudicial variance between the allegations in the indictment and the evidence adduced at trial in that the indictment charged one conspiracy and the evidence adduced at trial indicated there were in fact seven conspiracies, and that Woods was only involved in one of the seven; (2) The district court erred in refusing to strike the improper co-conspirator statement of Iiland after Iiland's motion for acquittal on the conspiracy charge was granted by the district court; (3) The government's witnesses, Christopher Peters, an F.B.I. agent, and Dale Francetic, a Tulsa police officer, were allowed to remain in the courtroom during the trial, which violated Fed. R. Evid. 615; (4) Woods' convictions were based on perjured testimony of Secret Service Special Agent Parkman and witness Pearson; (5) Improper restriction of counsel for Woods in his cross-examination of government witness Timbrook; (6) Cumulative error; (7) Insufficient evidence to support Woods' conviction on Count XI; and (8) The district court misapplied the Sentencing Guidelines in factoring into Woods' base offense level drugs found in Kathy Cooper's home on June 16, 1996, counsel contending that there was insufficient evidence to show that Woods was in constructive possession of such. Our study of the record and the briefing on these eight matters indicates that there is no

reversible error in connection with any. This was a five week jury trial with numerous witnesses being called by the government, which, as above stated, included co-conspirators who, along with others, gave direct testimony involving Woods and the other defendants. Thus, viewed in context, we conclude there was no error.

By supplemental brief, Woods, through counsel, draws to our attention to *Apprendi Jr. v. New Jersey,* 530 U.S. 466, decided June 26, 2000. Counsel argues that under *Apprendi*, Counts I and XI in the indictment were fatally defective under the Fifth and Sixth Amendments because neither identified both the precise drug involved and the quantity thereof. Counsel further argues that, in any event, should we affirm Woods' convictions, the sentences imposed should be vacated and the case remanded for re-sentencing after the district court has considered the possible applicability of *Apprendi.*

*Apprendi,* which involved a state criminal conviction, was presaged by *Jones v. United States,* 526 U.S. 227 (1999).[2] As indicated, in his supplemental brief counsel argues that Counts I and XI of the second superceding indictment are fatally defective because neither sets forth both the identity of the particular drug involved and the quantity thereof. In this regard, Count I does not identify the drug involved, using the phrase

---

[2]In *Jones* at 243 n. 6, which involved a federal criminal conviction, the Supreme Court spoke as follows:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

"controlled substance," nor the quantity thereof, and while Count XI identified the drug involved as heroin, it does not allege the quantity involved. In thus arguing, counsel relies on *Apprendi.* We think that counsel over reads *Apprendi.* In *Apprendi,* the court spoke as follows:

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones.* <u>Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt</u>. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S. at 252-253 (opinion of STEVENS, J.); *see also Id.* at 253 (opinion of SCALIA, J.).

*Id.* at 455 (emphasis added).

Counsel also argues that under *Apprendi,* we must, at the very least, vacate the sentence imposed and remand for re-sentencing in accord with *Apprendi*. As we understand it, counsel does not really argue that the district court committed reversible error in sentencing Woods to imprisonment for 216 months, which was within the guideline range of 188 to 235 months. Imprisonment for 216 months (18 years) does not exceed the statutory maximum term set forth in either 21 U.S.C. § 841(b)(1)(A) (life) or 21 U.S.C. § 841(b)(1)(C) (20 years). Rather, counsel argues that the district court's imposition of a five year supervised release on both Count I and XI, to run concurrently, offends *Apprendi*. In this regard, 21 U.S.C. § 841(b)(1)(A) provides, *inter alia,* that in the

- 13 -

absence of a prior conviction, the district court in sentencing a person thereunder shall impose a term of supervised release "of at least five years." 21 U.S.C. § 841(b)(1)(C) provides, *inter alia,* that in the absence of any prior conviction, the district court in sentencing a person thereunder, shall impose a term of supervised release "of at least three years." As indicated, the district court imposed a term of supervised release of five years on each count which is consistent with 21 U.S.C. § 841(b)(1)(C), which mandates a term of supervised release "of at least three years." In other words, it may be more than three years. In this regard, see our recent case of *United States v. Heckard*, 238 F.3d 1222 (10th Cir. 2001), where we held "that § 841(b)(1)(C) is not restricted by U.S.S.G. § 5(D)1.2(a) or [18 U.S.C.] § 3583(b)(2) from establishing terms of supervised release greater than three years."

Judgment affirmed.

<u>No. 00-5107, United States v. McCalister</u>

Michael McCalister was jointly tried with Iiland, Woods, and Eskridge and was convicted by the jury of conspiracy to possess with an intent to distribute controlled substances in violation of 21 U.S.C. §846. He was later sentenced to imprisonment for 290 months, supervised release for five years and $14,000 in fines. He now appeals his conviction and the sentence imposed thereon.

On appeal, counsel's principal argument is that there is insufficient evidence to support the jury's verdict that he was involved in any conspiracy and thus did not violate

21 U.S.C. §846, as charged. Our reading of the record indicates otherwise.

Counsel points out that of the government's thirty one witnesses, twenty four offered no testimony concerning McCalister, that only seven of the government's witnesses mentioned McCalister and that only two of these witnesses, namely Marque Greene and Charles Hudson, testified directly as to any drug activity on the part of McCalister.

As indicated, the second superseding indictment charged seventeen defendants with various and sundry drug offenses. In Count 1 of that indictment McCalister and fourteen of his co-defendants were charged with conspiring from 1991 to the date of the indictment (1999) with each other, "and with others, both known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A), namely possession of controlled substances, with intent to distribute and distribution of controlled substances and other such offenses as set forth below, all in violation of Title 21, United States Code, Section 846 as follows . . . ."

It is the government's position that Count 1 charged a "large scale" drug conspiracy extending from 1991 to 1999 in the Tulsa, Oklahoma area with drugs being brought form California and Mexico to Tulsa for distribution. As concerns McCalister, the government contends that its evidence indicated that McCalister became a part of that conspiracy in 1994 and continued to be a member thereof until 1999. Counsel for McCalister, however, suggests that there is insufficient evidence of any participation by McCalister in such

conspiracy, and, alternatively, that in about 1997 McCalister withdrew from the conspiracy when he voluntarily went to the FBI and became an informant. Counsel also argued that any participation by McCalister in drug sales in Tulsa was the result of entrapment. We are in accord with the government's analysis of the record.

In *United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444,450-451 (10th Cir. 1984) we spoke as follows:

> A conspiracy is a combination of two or more persons acting in concert to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The evidence must show circumstances to warrant a jury finding that the conspirators had a unity of purpose or a common design and understanding. A co-conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy. The agreement need not be shown to have been explicit. It can be inferred from the facts and circumstances of the case. Our examination of the evidence, with a view most favorable to the government, leads us to conclude that there is substantial proof, direct or circumstantial, together with reasonable inferences to be drawn therefrom, to sustain the burden of proving that the appellants were guilty of intentionally participating in a conspiracy to rig bids beyond a reasonable doubt.

*Id.* at 450-451 (citations omitted).

As we did in *Metropolitan*, our study of the present record viewed in a light most favorable to the government, convinces us that the direct and circumstantial evidence, together with reasonable inferences therefrom, is sufficient to support the jury's verdict that McCalister conspired as charged. Evidence that McCalister "withdrew" from any conspiracy was sparse, and would not expiate his prior participation therein. The further

- 16 -

suggestion that McCalister was somehow entrapped into drug sales was resolved by the jury acting pursuant to appropriate instructions on the matter.

Counsel next argues that the district court erred in denying McCalister's pre-trial request that he be tried separately. As indicated, McCalister was jointly tried with three other defendants, Iiland, Woods, and Eskridge. Counsel suggests that because the evidence against McCalister was so slight, and the evidence against the other three defendants was so strong, that he was prejudiced be being tried with the others. We are not persuaded.

Federal Rules of Criminal Procedure, 8(b) permits joinder of two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The grant or denial of a motion for severance is a matter resting within the sound discretion of the district court. *United States v. Holland*, 10 F.3d 696, 698 (10th Cir. 1993). The mere fact that one co-defendant may be less culpable than his co-defendants, is not, standing alone, sufficient grounds to establish abuse of discretion. *United States v. Williams*, 45 F.3d 1481, 1484 (10th Cir. 1995). While more witnesses may have testified against the other defendants, there was still considerable testimony involving McCalister.

McCalister was represented at trial by the Federal Public Defender's Office, he being indigent and unable to retain counsel. Apparently friction developed between

McCalister and his counsel and motions were filed to allow counsel to withdraw from the case. At a pretrial conference, the district court denied such request, and at trial the Defender's Office presented a vigorous defense. On appeal, counsel, no longer the Public Defender's Office, argues that the district court in denying the requests that trial counsel be permitted to withdraw from the case violated McCalister's Sixth Amendment rights and constituted reversible error. We disagree.

The Sixth Amendment right to counsel is not an absolute right and may not be insisted upon in a manner which will obstruct orderly judicial procedure or interfere with a court's exercise of it's inherent power to control procedure in the courtroom. *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990); *United States v. Freeman*, 816 F.2d 558, 564 (10th Cir. 1987). In denying at pretrial conference the most recent request that trial counsel be allowed to withdraw, the district court explained as follows:

> You know, it's becoming a little bit of a common practice for
> defendants who want to have their case severed from the
> others to attempt to get their - - get a new attorney or fire their
> existing attorney right before trial. This has happened several
> times here lately. I gather that's probably something that's
> going around the jailhouse as a possible way to effect a motion
> for severance. It's too late in the preparation for this case. The
> case is too large, it's too involved, there's too many aspects of
> judicial economy involved. I've already had a hearing with
> Mr. McCalister last week, which Mr. Knorr was there, and he
> decided not to represent himself, but he made no mention of
> the fact at that time that he wanted the public defender's office
> to withdraw. So I don't - - I'm not inclined to grant that. I'll
> let the United States make any comment that they wish to

- 18 -

make.[3]

Counsel next challenges the admission at trial of the wiretap evidence, claiming that the "necessity" therefore was not demonstrated. This argument has previously been considered and rejected by us in Busby's appeal.

Counsel's final argument is that, at sentencing, the district court erred in estimating the amount of drugs involved in determining relevant conduct. However, it would appear that there was no objection to the Probation Office's computation thereof as such was contained in the presentence report. In this connection, "[w]e have repeatedly held that if a defendant fails to object to his presentence report, he waives his right to challenge the district court's reliance on it, unless the district court's decision to do so amounts to plain error." *United States v. Ivy*, 83 F.3d 1266, 1297 (10th Cir. 1996). Counsel has not demonstrated plain error.

Judgment affirmed.

Entered for the Court,

Robert H. McWilliams
Senior Circuit Judge

---

[3] We are not persuaded by counsel's further argument that if the district court had held a "detention" hearing, which McCalister had twice waived, he would have been released from pre-trial detention and could have earned money and retained counsel.