**F I L E D**
**February 1, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES of AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL L. McCALISTER, aka Big Mike,

      Defendant-Appellant.

No. 04-5034
(D.C. No. 99-CR-20-K)
(N.D. Okla. )

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **MURPHY** and **McCONNELL**, Circuit Judges.

---

In this 28 U.S.C. § 2255 proceeding, Defendant-Appellant Michael L.

McCalister challenges his 290-month sentence imposed for his conspiring to

distribute drugs. On appeal, he argues that his sentence was imposed contrary to

1) Blakely v. Washington, 542 U.S. 961 (2004); 2) Apprendi v. New Jersey, 530

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S. 466 (2000); and 3) United States v. Pace, 981 F.2d 1123 (10th Cir. 1992).

McCalister asserts these arguments in the context of

ineffective-assistance-of-counsel claims. Because we conclude that Blakely does

not apply retroactively to McCalister's case, and because defense counsel's

failure to raise the Apprendi and Pace claims in a timely manner did not prejudice

McCalister, in light of the overwhelming evidence in the record supporting the

sentence imposed, we AFFIRM the district court's decision to deny McCalister

§ 2255 relief.[1]

## I.    BACKGROUND

In May 1999, the United States indicted McCalister[2] on one count of

conspiring to possess controlled substances with the intent to distribute them, in

violation of 21 U.S.C. § 846.[3] The second superseding indictment listed five

objects of the charged conspiracy:

> 1. To possess with intent to distribute and to distribute cocaine
> and cocaine base, a Schedule II controlled substance, in violation of

---

[1]    The district court granted McCalister leave to proceed on appeal in forma pauperis. See 28 U.S.C. § 1915(a). And this court previously granted McCalister a certificate of appealability on all of the claims he now asserts on appeal. See 28 U.S.C. § 2253(c).

[2]    Along with McCalister, the grand jury indicted sixteen others.

[3]    21 U.S.C. § 846 provides that "[a]ny person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy."

2

Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(ii).

    2.    To possess with intent to distribute and to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii).

    3.    To possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vii).

    4.  To possess with intent to distribute and to distribute Heroin, a Schedule I controlled substance, in violation of 21 United States Code, Section 841(a)(1) and (b)(1)(A)(i).

    5.  To use communication facilities in committing and/or causing or facilitating the commission of acts in violation of Title 21, United States Code, Section 841(a)(1) and Section 843(b).[4]

Based on the statutory citations included in the indictment, the Government had

charged McCalister with conspiring to distribute five or more kilograms of a

_____

    [4]    The indictment refers to 21 U.S.C. § 841(a)(1), which makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 841(b)(1)(A) sets forth some of the penalties available for violating § 841(a). 21 U.S.C. § 843(b), the fifth charged object of the conspiracy, makes it

> unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communications.

substance containing cocaine, see 21 U.S.C. § 841(b)(1)(A)(ii); fifty or more grams of methamphetamine, see id. § 841(b)(1)(A)(viii) (this section had previously required proof of 100 grams of methamphetamine); 1000 or more kilograms of marijuana, see id. § 841(b)(1)(A)(vii); and one kilogram or more of heroin, see id. § 841(b)(1)(A)(i). These amounts of each charged substance carried a statutory maximum sentence of at least ten years and no more than life in prison. See id. § 841(b)(1)(A). The fifth charged object of the conspiracy, using a communications facility to facilitate the distribution of drugs, provided for a four-year maximum statutory term of imprisonment. See 21 U.S.C. § 843(d)(1).

At trial, the district court instructed jurors that to convict McCalister of conspiracy, "[t]he Government must prove at least one of these objects beyond a reasonable doubt . . . and you must unanimously agree upon which of the five offenses [McCalister] conspired to commit." The jury convicted McCalister on the conspiracy count, but the verdict form did not require jurors to specify further which of the five objects they had found McCalister guilty of conspiring to commit.[5] Neither did the verdict form require jurors to find the specific types and amounts of controlled substances that McCalister was guilty of conspiring to distribute.

---

[5] McCalister specifically does not challenge his conviction.

4

At sentencing, the trial court adopted the presentence report ("PSR"), to which McCalister did not object. The PSR calculated McCalister's sentence, in part, based on 498.5 grams of methamphetamine, 454.4 grams of cocaine, 28.35 grams of heroin, and 2,726.1 grams of marijuana.[6] The district court sentenced McCalister to 290 months in prison. On direct appeal, this court affirmed McCalister's conviction and sentence. See United States v. Busby, 16 Fed. Appx. 817, 825-27 (10th Cir. 2001) (unpublished).

McCalister then filed the 28 U.S.C. § 2255 motion underlying this appeal. The district court denied relief. McCalister now appeals from that decision, specifically challenging only his sentence.

## II.    DISCUSSION

On appeal, McCalister asserts that he is entitled to resentencing under 1) Blakely, 542 U.S. 961; 2) Apprendi, 530 U.S. 466; and 3) Pace, 981 F.2d 1123. For the following reasons, we conclude none of these cases warrant relief from McCalister's sentence.

### A.    Blakely claim.

McCalister's conviction and sentence became final on October 29, 2001,

---

[6]    In doing so, the district court was following "the practice in federal courts at the time" by finding the type and quantity of drugs for which McCalister was responsible during the sentencing proceeding and then imposing a sentence based upon those findings. United States v. Cotton, 535 U.S. 625, 628 (2002); see also United States v. Wilson, 244 F.3d 1208, 1214-15 (10th Cir 2001).

when the Supreme Court denied him a writ of certiorari following this court's decision denying him relief on direct appeal. See United States v. Price, 400 F.3d 844, 846 (10th Cir.), cert. denied, 126 S. Ct. 731 (2005). The Supreme Court did not decide Blakely until later, in June 2004. In light of that and because Blakely does not apply retroactively to initial habeas petitions, McCalister's Blakely claim fails. See Price, 400 F.3d at 845.

### B. Apprendi and Pace claims.

#### 1. Procedural posture.

The Supreme Court decided Apprendi in June 2000, see 530 U.S. 466, after McCalister's trial, which occurred in September 1999, and his sentencing, which occurred in May 2000, but before this court had decided his direct appeal in July 2001, see Busby, 16 Fed. App. at 817. Therefore, Apprendi does apply to McCalister's case. See United States v. Lott, 310 F.3d 1231, 1238 (10th Cir. 2002). McCalister, however, failed to raise an Apprendi argument on direct appeal. Therefore, he has procedurally defaulted this claim. See United States v. Bailey, 286 F.3d 1219, 1221 (10th Cir. 2002). See generally United States v. Frady, 456 U.S. 152, 167-68 (1982).

As cause excusing this default, see Frady, 456 U.S. at 167-68, McCalister argues his direct-appeal counsel was ineffective for failing to assert an Apprendi claim. McCalister also asserts a separate § 2255 claim alleging his direct-appeal

6

counsel was ineffective, again for failing to assert an <u>Apprendi</u> claim.[7]

McCalister properly asserted this claim for the first time in his § 2255 motion.

See <u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003); <u>United States v.</u>

<u>Galloway</u>, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

Turning to the procedural posture of McCalister's <u>Pace</u> argument, this court

decided <u>Pace</u> in 1992, long before McCalister's trial and direct appeal.

Nevertheless, McCalister's defense attorneys failed to raise <u>Pace</u> at trial, at

sentencing, or on direct appeal.  Therefore, McCalister has also procedurally

defaulted his <u>Pace</u> claim.  See <u>Frady</u>, 456 U.S. at 167-68.  Nevertheless,

McCalister again argues that this default should be excused by the ineffective

representation he received from both his trial and direct-appeal attorneys.  <u>See</u>

<u>Frady</u>, 456 U.S. at 167-68.  McCalister also asserts separate claims alleging that

his trial and direct-appeal counsel provided ineffective assistance by failing to

raise a <u>Pace</u> issue at trial, at sentencing, or on direct appeal.  McCalister properly

raised these ineffective-assistance claims for the first time in his § 2255 motion.

See <u>Massaro</u>, 538 U.S. at 509; <u>Galloway</u>, 56 F.3d at 1240.

### 2.    Ineffective-assistance standard.

---

[7]    In his § 2255 motion and supporting pleadings, McCalister argued that his *trial* counsel was also ineffective for failing to make an <u>Apprendi</u>-type argument at trial or sentencing, both of which occurred before the Supreme Court decided <u>Apprendi</u>.  Nonetheless, McCalister specifically does not now reassert his ineffective-trial-counsel claim on appeal.

7

In light of the procedural posture of McCalister's <u>Apprendi</u> and <u>Pace</u> claims, this court must consider those claims through the prism of an ineffective-assistance-of-counsel argument. To establish ineffective assistance, McCalister must show both that 1) counsel's performance was deficient; and 2) counsel's deficient performance prejudiced him. See <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Counsel's performance will be deemed deficient if it fell below an objective standard of reasonableness. See <u>id.</u> at 688. And to establish prejudice, McCalister must show that there is a reasonable probability that, but for counsel's deficient performance, the result of McCalister's sentencing would have been different. See <u>id.</u> at 694. <u>Strickland</u>'s two-pronged test applies to claims alleging that trial as well as appellate counsel were unconstitutionally ineffective. See <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).

This court need not address both <u>Strickland</u> inquiries if McCalister has failed to make an adequate showing on one. See <u>Strickland</u>, 466 U.S. at 697. In this case, because McCalister cannot show that counsel's failure to assert <u>Apprendi</u> and <u>Pace</u> claims prejudiced McCalister, this court need not first consider whether counsel's performance in failing to raise these claims was

deficient.[8]

### a. Prejudice stemming from direct-appeal counsel's failure to raise <u>Apprendi</u>.

<u>Apprendi</u> held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" <u>Lott</u>, 310 F.3d at 1238 (quoting <u>Apprendi</u>, 530 U.S. at 490); <u>see also</u> <u>Cotton</u>, 535 U.S. at 627. Under <u>Apprendi</u>, therefore, "the quantity of drugs involved for an offense under 21 U.S.C. § 841 is an 'essential element' that must be charged in an indictment,[9] submitted to a jury, and proven beyond a reasonable doubt if that fact exposes the defendant to a heightened maximum sentence under the enhancement provisions of § 841(b)(1)(A) or (b)(1)(B)."[10] <u>Lott</u>, 310 F.3d at 1239 (footnote

---

[8]     Because this prejudice determination can be made from the trial record alone, the district court did not abuse its discretion in refusing to conduct an evidentiary hearing before denying McCalister § 2255 relief.

[9]     McCalister does not challenge the indictment in his case as contrary to <u>Apprendi</u>.

[10]     Drug quantity is an essential element of a 21 U.S.C. § 841 offense because of the structure of that statute. Section 841(a) sets forth the conduct proscribed by that section, including the manufacture or distribution of controlled substances. Section 841(b) then sets forth the statutory penalties for violating § 841(a). Those penalties vary according to the type and quantity of the controlled substances involved in the § 841(a) offense. <u>See generally</u> <u>Lott</u>, 310 F.3d at 1238 n.3 (discussing 21 U.S.C. § 841(a) and (b)). In this case, § 841 was implicated because the Government had charged McCalister under 21 U.S.C. § 846, with conspiring to violate § 841(a), among others statutory provisions.

(continued...)

omitted; footnote added); see also United States v. Arras, 373 F.3d 1071, 1074 (10th Cir. 2004).

As previously mentioned, the Supreme Court decided Apprendi after McCalister's trial and sentencing, but while his direct appeal remained pending. McCalister's trial counsel, therefore, understandably did not raise an Apprendi objection at trial or during sentencing. In light of that, however, had appellate counsel raised an Apprendi argument on direct appeal, this court would have reviewed that claim only for plain error. See Bailey, 286 F.3d at 1222; see also Cotton, 535 U.S. at 628, 631; Lott, 310 F.3d at 1238, 1239; United States v. Avery, 295 F.3d 1158, 1181-82 & 1182 n.20 (10th Cir. 2002).

> [B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Cotton, 535 U.S. at 631 (quotations, citations, alterations omitted).

This court has recognized that the Apprendi error that occurred in this case amounts to plain error. See Lott, 310 F.3d at 1241; Bailey, 286 F.3d at 1222.

---

[10](...continued)
And a conspiracy conviction under § 846 derives its penalty from the object of the conspiracy. See 21 U.S.C. § 846.

Nevertheless, a defendant cannot meet the fourth[11] plain-error prong where there is overwhelming evidence from which a jury, had it been presented with the question, would have found the amounts of controlled substances that would support the sentence imposed.[12] See Wilson, 244 F.3d at 1220 n.7; United States v. Keeling, 235 F.3d 533, 539-40 (10th Cir. 2000); cf. Cotton, 535 U.S. at 632-33 (applying similar analysis to Apprendi claim challenging indictment because it failed to allege drug quantity). See generally United States v. Mora, 293 F.3d 1213, 1219 (10th Cir. 2002) (noting "admitted Apprendi error can be excused if the evidence on the factor is overwhelming"). As discussed more fully below, in this case, the trial record contained overwhelming evidence that the conspiracy involved sufficient amounts of cocaine, methamphetamine, and heroin to support

---

[11]    It is unnecessary for a court to address the plain-error test's third inquiry–whether the plain error affected a defendant's substantial rights–where a defendant is unable to meet the fourth inquiry. See Cotton, 535 U.S. at 632-33.

[12]    In United States v. Cernobyl, 255 F.3d 1215 (10th Cir. 2001), this court concluded instead that a defendant asserting an unpreserved Apprendi argument was able to meet all four plain-error prongs. See id. at 1218, 1220-21. In that case, however, where the defendant pled guilty, this court specifically held that the defendant had met the fourth prong of the plain-error test because, among other things, the Government was never required to submit its evidence to a fact finder for proof beyond a reasonable doubt and the only evidence supporting the challenged sentence enhancement was in doubt. See id. at 1220. In Cernobyl, this court distinguished a situation like the one presented in the instant case, where the evidence supporting the enhancement "is overwhelming or uncontroverted." Id.

11

the 290-month sentence the district court imposed.[13]

### b. Prejudice stemming from trial and direct-appeal counsel's failure to raise Pace argument.

McCalister also argues that, because the jury convicted him of a conspiracy with multiple possible objects, but without specifying which of those multiple objects McCalister was guilty of conspiring to commit, the district court erred by not sentencing McCalister based on the charged object carrying the lightest maximum statutory penalty, i.e. the use of a communications facility to distribute drugs. McCalister further asserts that his trial counsel was ineffective for failing to raise Pace during sentencing, and his appellate counsel was ineffective for failing to make this argument on direct appeal.

In Pace, the Government charged the defendant with several drug trafficking counts involving "methamphetamine/amphetamine." 981 F.2d at 1126. The jury returned a general guilty verdict on those counts "which did not allow the jury to indicate whether it found the offenses to involve methamphetamine, or amphetamine, or both." Id. The district court, however, calculated Pace's

---

[13] In United States v. Stiger, 413 F.3d 1185, 1192-93 (10th Cir.), cert. denied, 126 S. Ct. 775 (2005), this court held that Apprendi only requires that a jury find beyond a reasonable doubt the amount of drugs involved in the overall conspiracy. That finding then sets the sentencing ceiling for all the defendants convicted of involvement in the conspiracy. See Stiger, 413 F.3d at 1193. The district court, at sentencing, can properly determine the quantity of drugs for which each individual defendant is responsible. See id.

12

sentences using the sentencing guidelines' base offense level for methamphetamine, which was higher than the base offense level for amphetamine. See id. Reviewing for plain error, this court vacated those sentences because the jury might have convicted Pace based on the lighter punished substance, amphetamine. See id. at 1129-30.

The Pace panel relied in part on this court's earlier decision in Newman v. United States, 817 F.2d 635 (10th Cir. 1987). See Pace, 981 F.2d at 1128. In that case, the jury convicted Newman of conspiring to distribute cocaine (a narcotic), and methaqualone and marijuana (both non-narcotics). 817 F.2d at 636. A conspiracy to distribute a narcotic–the cocaine–carried a fifteen-year statutory maximum sentence, while distributing a non-narcotic–the methaqualone or the marijuana–carried only a five-year statutory maximum sentence. See id. at 637. This court held that the district court's fifteen-year sentence, based upon the more heavily penalized controlled substance, could not stand. See id. at 637-39.

Pace and Newman, then, indicate that where the Government charges a multi-object conspiracy and the jury returns only a general guilty verdict, the district court can only sentence the defendant based upon the least-punished object of the conspiracy on which the jury might have convicted him. In Edwards v. United States, 523 U.S. 511, 513-14 (1998), however, decided before McCalister's trial, the Supreme Court "reject[ed] this court's general approach" in

13

Pace and Newman.  United States v. Bell, 154 F.3d 1205, 1210 (10th Cir. 1998).

Contrary to Pace and Newman, the Supreme Court in Edwards held that it did not matter on what object the jury had based a conspiracy conviction resulting from a charged multi-object conspiracy, because it was the district court, at sentencing, that would "determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable–and then to impose a sentence that varies depending upon amount and kind."[14]  Edwards, 523 U.S. at 514.  Edwards, then, deemed it irrelevant whether or not the jury found the defendant guilty of one or the other charged objects of the conspiracy, rejecting "petitioner's argu[ment] that the drug statutes, as well as the Constitution, required the judge to assume that *the jury* convicted them of a conspiracy involving *only* cocaine" because "even if they are correct, it would make no difference to their case.  That is because the Guidelines instruct a sentencing judge to base a drug-conspiracy offender's sentence on the offender's 'relevant conduct.'"  Id. at 515.

---

[14]     Here, because we consider the law as it existed at the time that McCalister's attorneys failed to assert Pace, in 2000 and 2001, we do not address the effect subsequent Supreme Court case law, including Blakely and United States v. Booker, 543 U.S. 220 (2005), have had on Edwards.  See Knox v. United States, 400 F.3d 519, 521-22 (7th Cir.), cert denied, 126 S. Ct. 358 (2005); Black v. United States, 373 F.3d 1140, 1141-42, 1142-43 (11th Cir. 2004), cert denied, 543 U.S. 1080 (2005); see also Revilla v. Gibson, 283 F.3d 1203, 1220-21 (10th Cir. 2002) (in considering whether counsel's performance was deficient, this court looked to state of the law at the time counsel purportedly erred).

14

Thus, the sentencing judge [in Edwards] would have had to determine the total amount of drugs, determine whether the drugs consisted of cocaine, crack, or both, and determine the total amount of each–regardless of whether the judge believed that petitioner's crack-related conduct was part of the "offense of conviction," or the judge believed that it was "part of the same course of conduct or common scheme or plan." The Guideline sentencing range–on either belief–is identical.

Id. Therefore, at the time of McCalister's sentencing and direct appeal, Edwards permitted the district court, during sentencing, to impose a sentence for a drug conspiracy conviction based on the type and quantity of drugs that the district court found during the sentencing proceeding.

Nonetheless, the Edwards Court went on to note that

petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only [the lesser-punished substance] conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines. But, as the Government points out, the sentences imposed [in Edwards] were within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner.

Id. (citations omitted). Edwards, therefore, did not address a situation where the sentence imposed on a multiple-object conspiracy conviction exceeded the statutory maximum sentence permitted by the least-punished object charged. But that is precisely the situation we must address in this case. The five charged objects of the conspiracy in this case carry different statutory maximum penalties. The object carrying the lowest statutory maximum, the use of a communications

15

facility, provides for only a statutory maximum sentence of four years, or eight years if the defendant has a prior conviction.[15]  See 21 U.S.C. § 843(b), (d).  The 290-month sentence the district court imposed, therefore, clearly exceeds any of the possible statutory maximum penalties available for the use of a communications facility.

Despite this fact, McCalister will not have been prejudiced by this apparent Edwards error if there is sufficient evidence in the record to support a jury's finding the greater-punished objects of the conspiracy, had the jury been asked to consider the question.  See Knox, 400 F.3d at 521-23 (7th Cir.) (rejecting claim that appellate attorney provided ineffective representation by failing to assert claim under Edwards); Black, 373 F.3d at 1141-43, 1146-47 (11th Cir.) (same; noting further that relevant Eleventh Circuit precedent existing at the time would have required a successful defendant to establish, among other things, that evidence would have *only* supported a jury's convicting him of conspiracy object carrying lightest sentence); cf. Bell, 154 F.3d at 1206-07, 1211-12 (holding there was no plain error under Edwards warranting relief where, although Government

_____

[15]     Although it appears that the district court may have sentenced McCalister based upon his having a prior felony drug conviction, McCalister now argues that was not the case.  And the record before this court is insufficient to determine whether or not he was subject to such an enhancement.  In this case, however, it does not matter.  Even assuming McCalister did not have a prior felony drug conviction, the evidence presented at trial would support the 290-month sentence the district court imposed.

charged and the jury convicted the defendant of conspiring to distribute cocaine powder and cocaine base, record showed guilty verdict was not "ambiguous," but was clearly based on activities involving only cocaine base, the substance subject to the greater statutory penalties). And as explained below, the overwhelming evidence in this case would clearly support a jury's finding all of the charged objects of the conspiracy that would support the sentence imposed.

> **c.** **Whether the evidence would have supported the jury's finding beyond a reasonable doubt all five conspiracy objects, and the type and quantity of drugs necessary to support the 290-month sentence that the district court imposed.**

McCalister's conspiracy conviction arose out of his involvement with a "'large scale' drug conspiracy extending from 1991 to 1999 in the Tulsa, Oklahoma area with drugs being brought in from California and Mexico to Tulsa for distribution."[16] Busby, 16 Fed. Appx. at 825. As explained further below, there is overwhelming evidence establishing that this conspiracy involved all four charged controlled substances–cocaine, methamphetamine, heroin and marijuana–in addition to using communications facilities to distribute these drugs. That evidence, then, precludes any relief based upon Pace and Edwards. Additionally there was overwhelming evidence establishing that the conspiracy

---

[16] On direct appeal, this court rejected McCalister's claim that there was insufficient evidence indicating that he was a member of this conspiracy, see Busby, 16 Fed. Appx. at 825-26, and that issue is not now before this court.

was involved with sufficient amounts of cocaine, methamphetamine, and heroin to support the 290-month sentence the court imposed, precluding relief under Apprendi. The evidence established the following:

### i.     Cocaine.[17]

In 1991, Latrice Edmonds transported a kilogram, or 1,000 grams, of cocaine from Stockton, California to Tulsa. In February 1996, police executed a search warrant and found cocaine in Kenneth Woods' home, along with guns and scales and large amounts of cash. And in June 1996, officers executing a search warrant at Kathy Cooper's home discovered 387.26 grams of cocaine, along with a large amount of cash.

Further, Charles Hudson testified that he met McCalister in 1996 or 1997, and that Hudson and his girlfriend would buy cocaine from McCalister. After Hudson was arrested, he agreed to work with police. Hudson testified that, before he began cooperating with police, he had purchased $30,000 worth of cocaine from McCalister. Since Hudson was paying McCalister $1,000 per ounce, that

---

[17]     Although the indictment charged McCalister with conspiring to traffic in both cocaine and cocaine base, there is simply no evidence that the conspiracy was ever involved with cocaine base. Cf. Bell, 154 F.3d at 1206-07, 1211-12 (holding there was no plain error under Edwards warranting relief where, although Government charged and the jury convicted the defendant of conspiring to distribute cocaine powder and cocaine base, record showed guilty verdict was not "ambiguous," but was clearly based on activities involving only cocaine base, the substance subject to the greater penalties).

18

amounts to thirty ounces, or 850 grams,[18] of cocaine. In addition, Hudson

testified that after he began cooperating with police, he made several controlled

buys of cocaine from McCalister. Hudson specifically testified to an occasion

when he purchased one ounce, or over twenty-eight grams,[19] of cocaine from

McCalister, and another time when he purchased a quarter pound, or

approximately 113 grams,[20] of cocaine from McCalister. Other controlled buys

involved three and one-half grams and eight ounces, or over 226 grams,[21] of

cocaine.

This evidence indicates that the conspiracy was responsible for over 2,607

grams of cocaine (McCalister himself was responsible for over 1,220 grams). See

Stiger, 413 F.3d at 1192-93 (holding Apprendi requires only that the jury find

beyond reasonable doubt the amount of drugs involved in the overall

conspiracy).[22] Even assuming McCalister did not have a prior drug conviction,

---

[18]     See www.metric-conversions.org/weight/ounces-to-grams.htm.

[19]     See www.metric-conversions.org/weight/ounces-to-grams.htm.

[20]     See www.metric-conversions.org/weight/pounds-to-grams.htm.
Hudson testified that McCalister actually "shorted" him three ounces on this deal.

[21]     See www.metric-conversions.org/weight/ounces-to-grams.htm.

[22]     Stiger further provides that, after a jury finds beyond a reasonable
doubt the amount of drugs for which the overall conspiracy is responsible, the
district court can, at sentencing, determine for how much of that overall amount
each conspirator was responsible. See 413 F.3d at 1193. And in this case
(continued...)

19

the amount of cocaine in which the conspiracy was trafficking would support a sentence of up to forty years in prison. See 21 U.S.C. § 841(b)(1)(B)(ii) (providing statutory maximum forty-year sentence for 500 grams or more of cocaine). The evidence involving the conspiracy's trafficking in cocaine, therefore, fully supports the 290-month sentence the district court imposed.

### ii. Methamphetamine

Marque Green testified that, beginning in 1993, John Torrence made or "cut" methamphetamine in Green's kitchen. Between 1994 and 1997, McCalister would assist Torrence in preparing methamphetamine.

Green also testified that he would bring drugs, including methamphetamine, from California to Oklahoma. McCalister accompanied Green on two of these trips. Some of those trips would include up to two kilograms, or 2,000 grams, of methamphetamine at a time.

Other conspiracy members paid David Sump in methamphetamine to assist in transporting drugs. In November 1995, Tulsa police arrested Sump after finding him in possession of 1.5 grams of methamphetamine. After his arrest, Sump told officers that he and other conspirators had brought 1.5 pounds, or

[22](...continued)
McCalister does not argue that the district court erred at sentencing in determining the specific amounts for which McCalister was responsible. Our focus in this appeal, therefore, is only on the amount of drugs for which the overall conspiracy was responsible.

approximately 680 grams,[23] of methamphetamine from California to Tulsa hidden in peanut butter jars.

At the same time that Sump was arrested, police executed a search warrant at Carmen Oldham's residence, finding methamphetamine there. In February 1996, police executed a search warrant and found methamphetamine in Kenneth Woods' home, along with guns and scales and large amounts of cash. And in June 1996, officers executing a search warrant at Kathy Cooper's home discovered 243.25 grams of methamphetamine, along with a large amount of cash.

Charles Hudson testified that he would buy methamphetamine from McCalister. Hudson further testified that McCalister told him that McCalister had gone to California and brought back one pound, or approximately 453 grams,[24] of crystal methamphetamine.

In light of this evidence, the conspiracy was involved with at least 3,377 grams of methamphetamine (McCalister himself was implicated in at least 453 grams). Even without a prior drug conviction, just five grams of methamphetamine subjects a defendant to a forty-year statutory maximum sentence. See 21 U.S.C. § 841(b)(1)(B)(vii) (before 1998, ten grams was required to support statutory maximum forty-year sentence). In light of that, the evidence

---

[23]    See www.metric-conversions.org/weight/pounds-to-grams.htm.

[24]    See www.metric-conversions.org/weight/pounds-to-grams.htm.

of the conspiracy's involvement with methamphetamine fully supported the 290-month sentence that the district court imposed.

### iii.    Marijuana

Marque Green testified that he would bring marijuana from California to Oklahoma.  McCalister accompanied Green on two such trips.  On one of these trips, McCalister was part of a group bringing methamphetamine and at least two pounds, or 907 grams,[25] of marijuana from California to Oklahoma.  And in June 1996, officers executing a search warrant at Kathy Cooper's home discovered 147.5 grams of marijuana, along with a large amount of cash.  Further, Charles Hudson testified that he and his girlfriend would buy marijuana from McCalister. Hudson testified that at one time he bought a pound, or over 453 grams[26], of marijuana from McCalister.  There was, then, substantial evidence that the conspiracy was involved in trafficking marijuana.

### iv.    Heroin

In 1994, Arthur Simon delivered heroin for the conspiracy.  Simon testified to delivering at least thirty-one grams to specific dealers.

In 1995, David Sump and Chano Merlos obtained black tar heroin from Lynn Mackey in Stockton, California and transported that heroin, hidden in

---

[25]     See www.metric-conversions.org/weight/pounds-to-grams.htm.

[26]     See www.metric-conversions.org/weight/pounds-to-grams.htm.

peanut butter jars, to Carmen Oldham's home in Tulsa, Oklahoma. The drugs were distributed from Oldham's home. And a girlfriend of a conspirator testified that two conspiracy members, on several occasions, cut up black tar heroin in her kitchen.

In 1996, one of the conspiracy's heroin dealers, Susan Timbrook, agreed with police to make controlled buys of heroin. While working with police, Timbrook bought five grams of heroin. Timbrook testified that she sold heroin for about six months. She further testified that she would buy one to two grams of heroin each day, then sell some of it and use the rest.

On May 21, 1996, during a traffic stop involving one of the conspiracy's heroin dealers, Boyd Hatcher, police found thirty grams of heroin. After that stop, Hatcher agreed to work with police and conduct several controlled heroin purchases. Hatcher purchased ten grams while working with police.

Julia Pearson admitted to selling heroin in 1997. Conspirators delivered five grams of heroin to Pearson "quite a few" times. There were four to five times that conspirators delivered ten grams at one time, and four to six times they delivered twenty grams.

In June 1996, officers executing a search warrant at Kathy Cooper's home discovered 331.15 grams of black tar heroin, along with a large amount of cash.

A conservative calculation based on this evidence makes the conspiracy

23

responsible for 527 grams of heroin. One hundred grams of heroin is enough to support a statutory maximum forty-year sentence, even assuming McCalister did not have a prior drug conviction. See 21 U.S.C. § 841(b)(1)(B)(i). This evidence, therefore, fully supported the 290-month sentence that the district court imposed.

### v. Use of communications facility.

The fifth object of the charged conspiracy involved the use of a communications facility in the distribution of drugs. See 21 U.S.C. § 843(b). Charles Hudson, who was at that time cooperating with police, set up several controlled purchases of drugs from McCalister, using the telephone. This evidence was more than sufficient to support a jury's finding that McCalister had used a communications facility to distribute drugs.

### D. Conclusion.

There was, then, overwhelming evidence presented at trial from which a jury could have found beyond a reasonable doubt that the conspiracy involved 1) all five charged objects; and 2) a sufficient quantity of cocaine, methamphetamine and heroin to support the 290-month sentence the district court imposed. In light of that, McCalister suffered no prejudice because his appellate attorney failed to assert claims based upon Apprendi and Edwards/Pace during McCalister's direct appeal, nor because his trial attorney failed to raise Edwards

24

and <u>Pace</u> at trial or sentencing. Therefore, McCalister has not established cause excusing his procedural default of those claims. Further, his § 2255 claims alleging that his trial and direct-appeal counsel were constitutionally ineffective also fail.

## III.   CONCLUSION.

For the foregoing reasons, this court AFFIRMS the district court's decision denying McCalister § 2255 relief from his sentence.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge